MARTIN L. BRYANT, Administrator, &c., of JANE BRYANT, deceased, Respondent, *v.* MARY HELEN BRYANT and EDWARD P. OGILVIE, Appellants.

Where a bill of sale, signed by the deceased, who was a machinist, was found among his papers, after his death, which purported to convey to his mother, all his tools and the stock in his shop,—*Held*, in an action brought by the mother against the administrators of his estate to recover the value of the property included in such bill of sale, that no delivery of the instrument, sufficient to make it operative, would be presumed, although the plaintiff kept house for the deceased at the date of the paper and at the time of his death; and although it appeared that the deceased had promised to pay her for her services in keeping his house, and had in his lifetime, about the date of the paper, told his brother, "that he had given his mother a writing that was just the same to her as cash or money, and that she could sell him out at any time."

Evidence having been given by the plaintiff of a valid delivery of the bill of sale to her, by the deceased in his lifetime, and such evidence having been subsequently stricken out on the motion of the defendants, as evidence of the party's transaction with a deceased person, the defendant's motion for a nonsuit should have been granted irrespective of such evidence of delivery.

(Case argued January 6th, 1870; and decided March 21st, 1870.)

THIS is an appeal from a judgment of the New York Superior Court at General Term, affirming a judgment in favor of the plaintiff's intestate, Jane Bryant, against the defendants for the sum of $2,201.26.

The action was originally commenced by Jane Bryant, and was to recover for the alleged conversion by the defendants of certain property, the stock, tools, &c., in a machine shop, which she claimed as belonging to her by virtue of a certain paper called a bill of sale, signed by Samuel R. Bryant, her son, deceased, of whom the defendants were the administrators.

The following facts appeared upon the trial:

Samuel R. Bryant committed suicide by drowning himself on the 28th July, 1861. The original plaintiff, Jane Bryant, was his mother, and the defendant Bryant his wife, and the defendant Ogilvie his partner. He left also several children. Letters of administration on his estate were issued on the 21st October, 1861, to the defendants.

Bryant was a machinist, and had a shop in 97 and 99 Columbia street, New York, where he had carried on business for a long time previous to 1858, and subsequently up to 1861.

In May, 1858, the defendant Ogilvie, who was his partner in another shop, lent him money to the amount of $1,100, and took a chattel mortgage to secure the debt, upon all the permanent property at the shop, consisting of the engine, boiler, shafting, lathes, drilling machines, vises, planes and patterns; which mortgage was duly filed in the Register's office. Ogilvie took possession of the property under the mortgage, but under an arrangement with Bryant, the mortgagor, evidence of which was excluded, the latter went on with the manufacture of engines, &c., in the shop, using the property as before, and continued to use it until his death.

When the administrators were appointed, in 1861, they proceeded to the shop of the deceased to make an inventory of the property of the estate, and did make an inventory of all the stock, tools, &c., there, subject to Ogilvie's claims under his mortgage.

This did not take place until November 25, 1861, several months after the death of S. R. Bryant.

No claim had, up to that time, been made by the plaintiff's

intestate, upon any of the property, by virtue of any bill of sale or in any other way, although she, at the time of his death, lived in his family, and one of the keys to the safe in the shop, where the bill of sale was found, was in the house, and was delivered by her to her son, the present plaintiff and the principal witness on that side, a week after the death.

She was permitted to give, under objection, on the trial, evidence of the transactions between her and the deceased in reference to the alleged bill of sale, and that it was delivered to her by him on the 19th day of October, 1858, and that it was for services rendered by her, in keeping house for the deceased at his request, and that she delivered back the bill of sale to him soon after; that the key of the shop was delivered to her by the deceased several months after the transaction of the bill of sale, and he himself kept another key to it, which was the one usually used to open it, and found on his body at the time of his death. She also sworo that she never rendered a bill to the deceased for services, and could not write, and never took possession of or in any way interfered with the property.

All of her testimony with reference to these transactions with the deceased, was stricken out by the court.

Putting that out of view, the facts appearing in the case, show that when the defendants proceeded to take possession of the property, on opening the safe of the deceased, at his shop, on 21st November, 1861, they found therein, in a drawer with other deeds and papers belonging to the deceased, the following paper:

"NEW YORK, *Oct.* 19, 1858.

"Mrs. JANE BRYANT:

"Bought of Samuel Rippley Bryant, all the stock and tools, and patterns, and everything about and on the premises of 97 and 99 Columbia street, New York, that belonged to the said Bryant, in the machine and steam engine business, for the sum of $1,100, for services and bill rendered.

"S. R. BRYANT."

There was no evidence other than that stricken out, that this paper had ever left the possession of the deceased, or ever been out of his possession or delivered to anybody. It appeared that the property covered by its terms, was worth something over $3,000. That no change whatever was made in the possession of the property; that the deceased continued in possession as before until his death; most of the *stock* was used up by him in manufacturing engines between that time and his death, three years subsequently, and at the date of this paper, he was pressed with debts and judgments were being entered against him.

The only evidence about the matter at all, was that of Martin L. Bryant, the present plaintiff, and son of the original plaintiff, who swears that the deceased got his mother, the original plaintiff, to keep house for him in '49 and in '56 and '58, and that in the fall of '58 the deceased told him that he had *given* his mother a writing which was the same as cash, and she could sell him out at any time.

The same Martin L. Bryant swore that he took charge of his mother's business about the 1st of January, 1861; that William Ogilvie, brother of the defendant, had told him then that the defendant's mortgage was arranged another way, and afterward, that when he spoke to the defendant about the mortgage, he also said it was arranged in another way.

But the defendant denied this statement, and swore, besides, that the mortgage was never paid, discharged, or arranged in any way, except the sum of $200, which the defendant had returned.

Evidence by the defendant, to show that, at the time of the bill of sale, the deceased had not property enough to pay his debts was excluded.

Evidence that the mother never made any claim against the property, during the lifetime of the deceased, was also excluded.

The judge charged that the mortgage, if not paid or extinguished, formed a perfect defence to the action; but he left it

to the jury to say whether it had been paid. To this last the defendant excepted. The judge also charged that it was for the jury to say whether the bill of sale was made in good faith, and for the purpose of transferring the property to the mother, and if they found that fact, the sale was good. He also charged that, if the mortgage should be found paid and the bill of sale good, then the plaintiff was entitled to recover the value of the whole of the property. These two portions were excepted to by the defendant.

The defendant moved for a nonsuit or dismissal of the complaint at different times, and on the ground, among others, noticed in the opinion.

*Samuel Hand,* for the appellant, on the question of delivery of the bill of sale, cited *Packard* v. *Wood* (4 Gray, 307); *Dyer* v. *Beam* (15 Ark., 519); that the sale without writing was void under the statute of frauds, he cited *Mattice* v. *Allen* (3 Trans. Appls., 243); *Brabin* v. *Hyde* (32 N. Y., 519); *Ely* v. *Ormsby* (12 Barb., 570).

That the motion for a nonsuit should have been granted also on the ground that there was no evidence explaining the want of change of possession of the goods, he cited Laws of 1858, chap. 314; *Marston* v. *Vultee* (12 Abb., 143); GROVER, J., *Russell* v. *White* (37 N. Y., 591); *Stevens* v. *Fisher* (19 Wend., 181); *Fonda* v. *Goss* (15 Wend., 628).

*George Owen* (*John Graham* with him), for the respondent, relied upon *Parker* v. *Jervis* (3 Keyes, 271), and *Buck* v. *Remsen* (34 N. Y., 383).

GROVER, J. The only question presented by the exception taken by the defendants' counsel to the denial of his motion for a nonsuit, at the close of the plaintiff's case, was whether the evidence of a delivery of the bill of sale, under which the plaintiff made title by the defendants' intestate, was sufficient to warrant the submission of that question to the jury. In considering this question the testimony given by the then

plaintiff (present plaintiff intestate), which was struck out of the case, upon motion of the defendant, must be disregarded. This includes all the material evidence given by this witness upon this question. The evidence proved that after the death of the defendants' intestate, the bill of sale in question was found in the safe of the intestate, kept in his shop, among other papers belonging to him. It was executed by the intestate, and was in his handwriting. There was no evidence that any possession of the property had ever been taken, or control thereof had by virtue of the bill of sale, or any claim made to the property, or any part of it, under the same, although nearly three years had elapsed from the date of the paper to the death of the intestate; nor was any claim made to the property, by the plaintiff, after such death until the finding of the paper, although some months had elapsed before such finding. The intestate had used the property during his life, after the date of the paper, as his own, and had used up a portion of the stock covered by it during that time. Finding the paper in the safe of the intestate, among his papers, in his handwriting, although signed by him, so far from proving a delivery to the vendee, was evidence that it was never so delivered, and consequently never had any validity as a contract between the parties. The proof given that the plaintiff (the intestate's mother) had kept house for him, and tending to show the intestate indebted to her for such services, was no evidence whatever of the delivery of the bill of sale in question. The only evidence from which it can be plausibly claimed that a delivery of the bill of sale was shown, was the testimony of Martin L. Bryant, the son of the plaintiff. That testimony, in substance, was that in October or November, 1858, his brother, the intestate, told him that he had given his mother a writing that was just the same to her as money, or cash, or something of the kind, and upon being more particularly interrogated, he testified that he said that he had given her a writing that was just the same to her as cash, or money, and that she could, if she chose, sell him out at any time. That he conversed with him about

it several times, and also about his indebtedness to his mother. The inquiry is whether this evidence was sufficient *prima facie* to show a delivery of the bill of sale in question. I think not. There is nothing referring to this more than any other paper; nothing showing whether the writing referred to was a mortgage of chattel property, or an absolute transfer of such property; a mortgage of real estate, or a transfer thereof; or a statement authorizing the entry of a judgment, upon confession, against him. If, instead of finding, among the papers of the intestate, this bill of sale, a deed of his real estate, to his mother, executed by him, had been found, the evidence would have been equally cogent of its delivery, as this paper. The same may be said of any other paper to which his mother purported to be a party. Had the testimony in any way referred to the bill of sale in question, so as to identify it, then the remark of the intestate that he had given it to his mother would be evidence of a delivery. But it was not so identified, and consequently what the intestate said was no evidence of the delivery of the paper. Besides, the intestate spoke of a writing he had given to his mother. There was no evidence that he had ever delivered this paper to her, but on the contrary, from its being found among his papers, after his death, the presumption was that he had never given it to her, and that in his conversation with his brother as to having given his mother a writing, he referred to some other paper. The onus was upon the plaintiff to show her title to the property. As it remained in the possession of the intestate until his death, the defendants, as his administrators, had a *prima facie* title. The plaintiff based her title upon the bill of sale. To sustain this she was bound to show a delivery of it to her by the intestate. This she failed to do, and the judge erred in not granting a nonsuit. The counsel for the respondent insists that this question is not reviewable in this court, and cites *Parker* v. *Jervis* (3d Keyes) in support of his position. That case does not hold that when there is no evidence of a fact essential to the plaintiff's case, and an exception taken to a

refusal to nonsuit, for want of such evidence, that this court cannot review it. The law is clearly otherwise. All that the case decides is that when the evidence is conflicting upon the point, this court, after verdict, cannot examine into and pass upon the weight of evidence. This renders an examination of the remaining exceptions taken by the defendants unnecessary. The judgment appealed from must be reversed, and a new trial ordered; costs to abide the event.

For reversal, concurring with Grover's opinion, Earl, Ch. J., Smith, Foster, Sutherland and Ingalls, JJ.

Hunt and Lott, JJ., for affirmance.

Judgment reversed, and new trial ordered.