PETER BRUNER, Respondent, *v.* HENRY MEIGS et al., Trustees, etc., Appellants.

A suit in equity to rescind an agreement for the sale of real estate because of defect in title or want of power in the vendor to sell cannot be maintained, as the party has a perfect defence to any action brought against him to enforce the contract.

The will of P. devised and bequeathed the residue of his estate, real and personal, after payment of debts, to his executors in trust, to rent and invest and pay the rents and income to his wife during her life, and immediately upon her death to divide the same into seven equal parts, and to hold the parts separately each during the life of a child of the testator named in connection therewith, paying to such child the rents and income, with directions upon the death of such child to convey, assign and deliver over said seventh part to his or her lawful issue, if no lawful issue to the wife or husband of such child, if surviving; if not, then to the testator's right heirs, with power to the executors during the existence of the respective trusts to sell and convey, change investments, etc. The wife of the testator died during his life. Two of the children also died before him, unmarried and without issue. H., another child, died after the testator, leaving issue. Plaintiff, after such death, contracted to purchase of the trustees a portion of the real estate. No division of the estate into shares had been made. In an action to recover back the purchase-money paid on the contract, *held,* that the two-sevenths designed for the two children who died before the testator, did not go to the trustees, but went directly to the testator's right heirs; that the estate vested in the trustees in the one-seventh held for the benefit of H. terminated upon his death; that the power to convey after the death of the *cestui que trust* to his issue did not constitute a trust or require the estate to be vested in the trustees, but was a power in trust merely which neither defeated nor delayed the vesting of the estate in those entitled in remainder; that the power to sell and change investments was a several power in respect to the property held under the respective trusts — not a general power embracing the whole estate to be exercised as long as any of the trusts continue — and that, therefore, as the trustees could not convey such title as plaintiff was bound to accept, the consideration had failed, and he was entitled to recover.

(Argued March 22, 1876; decided April 4, 1876.)

Appeal from judgment of the General Term of the Supreme Court in the first judicial department affirming a judgment in favor of plaintiff, entered upon decision of the court at Special Term. (Reported below, 6 Hun, 203.)

This action was brought for the cancellation of a contract of sale of certain premises in the county of Westchester, wherein defendants as trustees, under the will of John L. Palmer, deceased, were vendors, and plaintiff was vendee, and to recover back a payment of purchase-money made under said contract.

Said Palmer died in February, 1858, leaving a will executed July 1, 1847, and leaving a large real and personal estate. At the time of the execution of the will the testator's wife and seven children were living.

The first clause of the will provided for the payment of debts and funeral expenses. The second clause is as follows:

"Second. I give, devise and bequeath all the rest, residue and remainder of my estate, real and personal, effects, property and rights of property, whatsoever and wheresoever, which I may have, own or be entitled to at the time of my decease, to my beloved wife, Margaret Palmer, my son-in-law Edwin A. Oelrichs, my son Henry Palmer, and my friend Henry Meigs, Jr., of said city of New York, the survivors and last survivor of them; to have and to hold the same unto them, the survivors and last survivor of them, as joint tenants, and not as tenants in common, their successors and successor, heirs and assigns forever; upon trust nevertheless, and to and for the uses and purposes following, that is to say: In trust, to take, receive and hold all the said rest, residue and remainder of my estate, effects, property and rights of property, during the life of my said wife, Margaret Palmer, to lease or let the real estate so to them devised, and to invest the personal estate and property, and the proceeds thereof, upon bond and mortgage on improved and productive real estate, in fee simple, situated in the said city of New York, or in public stocks of the United States, or of the State of New York, or of the city of New York, and to keep the same so invested; and to collect, get in and receive the rents, interests, income, dividends and profits thereof, and pay and apply such rents, interest, income, dividends and profits, from time to time, as realized and received, after paying with and out of the same and deducting therefrom all taxes, assessments, expenses of insurance and repairs, and other necessary and proper charges upon my said residuary estate, to the use of my said wife, Margaret Palmer, during her natural life, and her receipts shall be sufficient evidences of such payment and application, and good and sufficient acquittances and dis-

charges therefor. And upon this further trust, and I do hereby devise, order and direct, that, immediately after the death of my said wife, all the said rest, residue and remainder of my estate, effects, property and rights of property, and the proceeds thereof, including all the rents, interest, income, dividends and profits thereof, or arising therefrom, not previously paid and applied in pursuance of the provisions hereinbefore contained, be, by the said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr, the survivors or survivor of them, their successors or successor, divided into seven equal parts or shares, and that in their ascertaining the amount of my said residuary estate for the purpose of such division into seven parts, they include in such estate, and compute as part thereof, all and every the sum and sums of money by me at any time advanced, or paid to or for, or on account of my seven children hereinafter named, each, any, or either of them; and charged to or against them, my said children, respectively, in my own handwriting, in a book of accounts kept by me at my dwelling-house, and marked on the inside of the cover thereof in my handwriting, ' John J. Palmer, number three,' but no interest shall be computed or charged upon any or either of said sums of money so paid or advanced. And that the said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, thereupon take, receive, have, hold, use and dispose of the said seven equal parts or shares of my said residuary estate, and each of such parts or shares, severally and separately, and the income thereof, and I give, devise, and bequeath the same, and each of them, severally and separately, and the income thereof, to, for and upon the trusts, uses and purposes following, that is to say : "

The seven succeeding clauses disposed each of one-seventh part for the use and benefit of a child of the testator, therein named, during life. These clauses were similar, varying only in accordance with the sex of the beneficiary, for life. Of one of these clauses, the following is a copy:

" Sixth. That they, the said Edwin A. Oehlrichs, Henry

Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, upon and immediately after the death of my said wife, take, receive and hold one other equal one-seventh part or share of my said residuary estate, to be ascertained in the manner above provided, less the amount of the several sums of money by me advanced, or paid to, for or on account of my son Henry Palmer, and charged to or against him in the said book of accounts above mentioned, during the natural life of my said son Henry. That they lease or let the real estate belonging thereto, and invest the personal estate and property upon bond and mortgage on improved and productive real estate, in fee simple, situated in the city of New York, or in public stocks of the United States or of the State of New York, or of the city of New York, and keep the same so invested. That they collect, get in and receive the rents, interest, income, dividends and profits thereof, and pay and apply such rents, interest, income, dividends and profits from time to time, as realized and received (after paying with and out of the same all taxes, assessments, expenses of insurance and repairs, and other necessary and proper charges upon the said last-mentioned one-seventh part), to the use of my said son Henry, during his natural life, and his receipts shall be sufficient evidence of such payment and application, and good and sufficient acquittances and discharges therefor; and that they, upon and immediately after the decease of my said son Henry (after the death of my said wife) leaving lawful issue him surviving, or, in case of his decease before the death of my said wife, leaving lawful issue surviving at the time of her decease, then upon and immediately after the death of my said wife, convey, assign, transfer, make over, pay and deliver all the said last-mentioned one-seventh part of my residuary estate (less the deduction last aforesaid), and the proceeds thereof then remaining, and all the property and rights of property in which the same or any part thereof shall then be invested, and all interests, income, dividends and profits thereof, or arising therefrom,

not previously paid and applied in pursuance of the provisions hereinbefore contained, to the then surviving child or children of my said son Henry, and the then surviving lawful issue of any his child or children deceased, in equal portions (if more than one), share and share alike ; such issue of any his child or children deceased, to have, receive and take the same share and portion to which his, her, or their parent would have been entitled if living.    But if it shall happen that my said son Henry shall depart this life after the decease of my said wife, without leaving lawful issue him surviving, or in case of his death before the decease of my said wife, without leaving lawful issue surviving at the time of her decease, then that they, said Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivors or survivor of them, their successors or successor, in the former case, upon and immediately after the death of my said son Henry, and in the latter case upon and immediately after the death of my said wife, convey, assign, transfer, make over, pay and deliver all such last mentioned one-seventh part of my residuary estate (less the deduction last aforesaid), and the proceeds thereof then remaining, and all the property and rights of property in which the same or any part thereof shall then be invested, and all interest, income, dividend and profits thereof not previously paid and applied in pursuance of the provisions hereinbefore contained, to the wife of my said son Henry at the time of his decease, if such wife there shall be then surviving, and if there shall be no such wife surviving, then to my own right heirs and legal representatives then surviving, in the same manner, shares and proportions in which they would have inherited and been entitled to the same if I had survived my said wife and son Henry, had owned and held said last mentioned one-seventh part in my own name and right at the time of my decease, and had died intestate."

The tenth and eleventh clauses of the will were as follows :

" Tenth. If it shall happen that at the time of the division of my residuary estate into seven shares or parts, as above

provided, the sum and sums of money by me advanced or paid to, for or on account of any one or more of my said children respectively, and charged to or against him or them severally in said book of accounts above mentioned, shall exceed the one-seventh share or part of my said estate, to which such child or children respectively will then be severally entitled, then, and in that case, it is my will, and I do devise, order and direct that the excess of money so advanced, paid and charged to either of my said children, over and beyond said one-seventh share or part of my said estate, shall not be required of or collected from the child or children respectively to or against whom the same shall be so charged, but I do hereby give and bequeath such excess to such child or children respectively, and each of them.

"Eleventh. The better to enable the said Margaret Palmer, Edwin A. Oelrichs, Henry Palmer and Henry Meigs, Jr., the survivor and survivors of them, and their successors or successor, to carry into effect the devises, bequests and directions hereinbefore contained, I do hereby give and grant to them, and such of them as shall at any time be authorized to execute the several trusts hereby created, or any or either of such trusts, full power and authority, at any and all times during the continuance of such trusts respectively, in their discretion, to change the investments of the estate and property by them held in trust, or any part thereof, and for such purpose or otherwise to grant, bargain, sell, convey, mortgage, lease, transfer and make over, as they may deem advisable, all or any parts or part of the real estate or personal property which shall be by them so held in trust, and to make, sign, seal, execute, acknowledge and deliver all and every such deeds, conveyances, mortgages, leases, transfers, agreements, and other instruments in writing as may be necessary or proper therefor."

The trustees named were appointed executrix and executors of the will.

The wife of the testator died before him, and two of the children named in the will, also died before his decease,

unmarried and without issue. No division of the estate into shares was made as directed by the will, but the executors and trustees held the same as one body, dividing the income. In November, 1872, Henry Palmer, the child named in the sixth clause above set forth, died leaving a wife and several children. The contract in question was entered into July 1, 1873, upon an auction sale of a portion of the real estate, of which the testator died seized. Plaintiff paid down, upon entering into the contract, ten per cent of the purchase-price and the auctioneer's fees. The Special Term held that the defendants had no power to convey a full title, such as plaintiff was entitled to, and directed judgment according to the prayer of the complaint. Judgment was entered accordingly.

*John J. Macklin* for the appellants. The whole estate vested in the trustees, subject to the execution of the trusts. (1 R. S., 729, §§ 55, 60.) The devise embraced the rents and profits from the testator's death to the time of the division. (*Rogers* v. *Ross*, 4 J. Ch., 388.) The trustees were vested with a conditional fee, with a limitation over by way of contingent remainder or executory devise, to such child or children as, upon a division, it would be ascertained were entitled to any interest in the estate. (Fearne on Con. Rem., 17, 19; 1 R. S., 725, § 27; id., 733, § 82; *Vedder* v. *Evertson*, 3 Paige, 287; *Willington* v. *Willington*, 1 Bla., 645; 4 Ben., 2165; 1 Greenl. Cruise, 65; 1 Washb., R. P., 63; *Duffield* v. *Duffield*, 3 Bligh., 340–344.) The interests of the devisees were not vested interests. (1 R. S., 728, § 13; *Elwin* v. *Elwin*, 8 Ves., 553; *Curtis* v. *Lukin*, 5 Beav., 147; *Manice* v. *Manice*, 43 N. Y., 303; Roper on Leg., 560; *Bernard* v. *Montague*, 1 Meriv., 522; *De Kay* v. *Irving*, 9 Paige, 521; 5 Den., 649; *Moore* v. *Littel*, 41 N. Y., 72, 80; 2 Powell on Dev., 251–360; 1 Jarm. on Wills, 797–809; *Phipps* v. *Williams*, 3 Sim., 44; *Ackerly* v. *Vernon*, Willes, 153; *Atkins* v. *Hiccock*, 1 Atk., 500; *Howes* v. *Herring*, 1 McC. & Y., 292; *Leake* v. *Robinson*, 2 Meriv., 363, 385; *Ford* v. *Rawlins*, 1 Sim. & Stu., 328; *Taylor* v. *Bacon*, 8 Sim., 100;

SICKELS — XIX.     65

*Burns* v. *Clark*, 37 Barb., 496; *Jackson* v. *Winne*, 7 W. R., 51; 1 Jarm. on Wills, 762, 771; 1 R. S., 723, § 13; *Newman* v. *Newman*, 10 Sim., 51; *Festing* v. *Allen*, 12 M. & W., 279; *Duffield* v. *Duffield*, 3 Bligh., 260, 333, 341; *Wills* v. *Wills*, 1 D. & W., 439, 452; *Bull* v. *Pritchard*, 15 Hare, 567; *Southern* v. *Wollaston*, 16 Beav., 166; *Boreham* v. *Bignall*, 8 Hare, 131; *Vawdry* v. *Geddes*, 1 R. & M., 203.) Assuming that the trusts, so far as Henry Palmer's children are concerned, had terminated, and that the interests had vested, the power of division may now be exercised. (*Hawley* v. *James*, 5 Paige, 548; *Manice* v. *Manice*, 43 N. Y., 303, 364; *Downing* v. *Marshall*, 1 Abb. Ct. App. Dec., 543; *Tate* v. *Swinstead*, 26 Beav., 525; *Wood* v. *White*, 4 Myl. & C., 460; *Trower* v. *Knightley*, 6 Mad., 134; *Kinnier* v. *Rogers*, 42 N. Y., 531; *Skinner* v. *Quin*, 43 id., 99; *Crittenden* v. *Fairchild*, 41 id., 289.) The court will construe liberally powers of division and sale in executors. (*Pearce* v. *Gardner*, 10 Hare, 387; *Hutchins* v. *Baldwin*, 7 Bosw., 236.) If a division can now be made, the power of sale may be executed and a valid title given. (*Egerton* v. *Conklin*, 25 W. R., 238; *Pearce* v. *Gardner*, 10 Hare, 287; 1 Sugd. on Powers, 334; 2 id., 463; *Morton* v. *Morton*, 8 Barb., 18; *Dorland* v. *Dorland*, 2 id., 63; *Bogert* v. *Hertell*, 4 Hill, 492; *Davone* v. *Fanning*, 2 J. Ch., 252.)

*Osborn E. Bright* for the respondent. The trust as to the share of Henry Palmer terminated on his death, and no division of the estate having been made, his heirs became seized of an undivided seventh part. (*Wood* v. *White*, 2 Keen., 664; 4 Myl. & C., 460; *Wolley* v. *Jenkins*, 23 Beav., 53.) The long neglect to divide the estate could not prevent the vesting of the interest of the remaindermen. (*Gaskell* v. *Harman*, 11 Ves., 507; *Bernard* v. *Montague*, 1 Meriv., 433; *Small* v. *Wing*, 5 Bro. P. C., 503; Tomlin's ed., 66.) The division of the estate into shares and the incidental ascertaining of the accounts are not in the nature of a condition precedent. (2 Powell on Devises, 261; *Cary* v. *Bertie*, 2 Vern., 340;

*Phipps* v. *Williams*, 5 Sim., 44; *Elton* v. *Elton*, 1 Wils., 159.) The power of sale was consistent with the testator's intention that the trustees should make an immediate division of his estate, and that the land embraced in each share should, on the death of the tenant for life, go to his issue in fee. (*Crittenden* v. *Fairchild*, 41 N. Y., 289; *Kinnier* v. *Rogers*, 42 id., 531; *Skinner* v. *Quin*, 43 id., 99.)

ALLEN, J. As a suit in equity to rescind an agreement for the sale of real estate by reason of a defect in the title or a want of power to sell in the vendors, the action could not be maintained. The plaintiff having a perfect defence at law and in equity in any action which might be brought to enforce the agreement, an action by him to rescind it would be unnecessary. But, as an action to recover money paid upon a consideration that has failed, this action can be sustained if the title of the defendants is not such as the plaintiff is bound to accept. The power of the defendants to make the sale and convey the property, the subject of the sale, is derived from the will of John J. Palmer, and depends upon the interpretation of that instrument. At the time of the making of the will the wife and seven children of the testator were living; the wife and two of the children died during the lifetime of the testator, the children dying unmarried and without issue; another of the children, Henry Palmer, died several years after the testator, leaving him surviving a wife and several children. By the will a valid trust was created in the executors of the entire estate for the benefit of the wife during her life. As that trust never took effect, by reason of the death of the wife, it need not be farther noticed. A valid several trust was also created for each of the seven children in one-seventh part of the residue of the estate, real and personal, which took effect in respect to each of the children living at the death of the testator, as to the one-seventh set apart for them respectively. The two-sevenths designed for the two sons that died before the testator, went directly upon the death of the latter to their right heirs, pursuant to the

directions of the will, and did not go to the executors in trust for any purpose. The trusts for the children were necessarily several to avoid a conflict with the statute against perpetuities, and the trust in each share or portion was created by. a distinct clause of the will for the child named as the beneficiary therein, and was to continue during the life of that child and no longer. The trust being for the leasing of real property, the collection of rents, the investment of the personal estate, the receipt of the income, and the paying and applying the rents and income to the use of the beneficiary for life, an estate was vested in the executors and trustees during the continuance of the trust. That trust ceased with the life of the person for whose benefit the rents and income of the estate were to be applied. The power and direction to transfer and convey the share or portion of the estate to those entitled under the will after the death of the *cestui que trust* for life did not constitute a trust, or require the estate to be vested in the executors and trustees named. It was merely a power in trust and could be executed as such. The estate and interest of those entitled in remainder did not depend upon the execution of that power, and the vesting of their estate could neither be defeated nor delayed by the neglects or omissions of those vested with the power. (*Manice* v. *Manice*, 43 N. Y., 303; *Skinner* v. *Quin*, id., 99.) The power of the defendants, as executors and trustees under the will, to sell, is in terms restricted and limited in point of time to the continuance of the respective trusts, and in respect to property to such as is held by them in trust. In the words of the will, the testator gives to them "full power and authority at any and all times during the continuance of such trusts, respectively, in their discretion, to change the investments of the estate and property by them held in trust or any part thereof, and for such purpose or otherwise to grant, bargain, sell, convey, mortgage, lease, transfer and make over as they may deem advisable, all or any parts or part of the real estate or personal property which shall be by them so held in trust." The power is not only in terms restricted to the property

held in trust, but was designed to enable the trustees during the continuance of the respective trusts to change the investments, with a view to increase the fund and the income to be derived from it. It is a several power in respect to the property held under the respective trusts, and not a general power embracing the whole estate, and to be exercised so long as any one of the trusts continues, or until a final partition of the estate is made. At the time of the sale to the plaintiff, the trust in respect to the one-seventh devised to Henry Palmer had ceased, and that one-seventh of the estate had vested in his children. Over that portion of the estate the defendants had no power except the naked power to convey to those entitled in remainder. Their power of sale had terminated. (*Wood* v. *White,* 2 Keen., 664; S. C., 4 M. & C., 460.) The will does not confer upon the executors a power of sale with a view to a distribution among the remaindermen, or in order to give to those entitled their shares upon the death of any one of the *cestuis que trust* for life, as the successors in interest of such *cestui que trust.* The direction in the will to ascertain the advancements for the several children, and deduct the amount from their respective shares did not delay or defer the time at which the estate should be divided into shares as directed, or continue or extend the trusts or the trust estate in the defendants. It is not denied that the children of Henry Palmer, the deceased's son, have succeeded to some share or portion of the estate under the will, and whether the same was a full one-seventh or less is unimportant. It was an undivided interest in the real property, including that sold to the plaintiff. It cannot be assumed in the absence of proof that any deduction was to be made from any particular share, still less that the advances made and to be deducted absorbed the entire share. But in no case could the dilatory dealing by the trustees with the estate affect third persons or those entitled in remainder.

The judgment must be affirmed.

All concur.

Judgment affirmed.