MICHAEL F. CUSACK, APPELLANT, *v.* OLIVER B. TWEEDY, INDIVIDUALLY AND AS SOLE SURVIVING EXECUTOR OF THE LAST WILL AND TESTAMENT OF JOSEPH N. LORD, DECEASED, RESPONDENT.

*Power of sale — when it survives the duration of the trust estate created by the will.*

A testator, by the eighth clause of his will, devised all his residuary estate as follows:

One-fourth part thereof to his executors, in trust, to rent and invest, and to collect and receive the rents, issues and profits thereof, and to apply the same to the use of his daughter, Maria Tweedy, for and during her natural life, and upon her death to convey and pay the said fourth part, with any unapplied rents and income thereof, unto and among such of the lawful issue of his daughter as might then be living, the issue of any deceased child of his said daughter to take the share to which the parent would have been entitled if living. The testator, in the same clause, devised the remaining three-fourths of the residuary estate in like manner in trust, one for the benefit of each of the three other daughters of the testator.

By the ninth clause of his will the testator provided as follows:

"*Ninth.* I hereby authorize and empower my said executors, and the survivors and survivor of them, and such, and whichever of them as shall act at their or his discretion from time to time, and at any time or times to sell and dispose of the whole or any part or parts, of my estate, both real and personal, at public auction or private sale, * * * and in the meantime my said executors, and the survivors and survivor and such, and whichever as shall act, are and is hereby authorized to collect and receive the rents of the whole and every part of my real estate."

Maria Tweedy named in the will subsequently died leaving issue.

*Held,* that the power of sale given to the executors survived the death of the said Maria Tweedy and operated upon the totality of the residue, and not merely upon each of the undivided portions of the estate; and was not extinguished, upon the falling in of one of the trusts, as to the quarter interest represented thereby.

That the provision following the power of sale that, "in the meantime, my said executors" are "authorized to collect and receive the rents of the whole and every part of my real estate," was not repugnant to the authority of the executors to exercise the power of sale after the termination of the life estate of one of the daughters, as this provision might well apply to a period during which the executor and the issue of the deceased daughter held the title as tenants in common. (VAN BRUNT, P. J., *dubitans.*)

APPEAL by the plaintiff Michael F. Cusack from a judgment, entered in the office of the clerk of the county of New York on the 19th day of July, 1889, dismissing the plaintiff's complaint.

The complaint alleged that, on the 1st day of February, 1888, the plaintiff entered into an agreement, in writing, with the defendant, as sole surviving executor of the last will and testament of Joseph N. Lord, whereby the defendant agreed to sell to the plaintiff certain premises in the city of New York upon certain terms in the complaint mentioned; that the defendant was unable to convey a good title to the premises; that, on the contrary, the premises were subject to various incumbrances, and in particular to an equal undivided one-third interest, or estate in fee simple, vested in the heirs-at-law of one Maria Burnham, deceased, and to the objection that the plaintiff had no right, power or authority, as executor, to convey the one equal fourth part or interest in the said premises, which, upon the death of Maria Tweedy, one of the *cestuis que trust* named in the will, vested in possession in her lawful issue then surviving, and the issue of any who were then dead.

Judgment was asked for the return of $1,000 stated to have been paid by the plaintiff to defendant, in pursuance of said agreement, and for certain sums expended for legal services in the examination of the title and for necessary disbursements.

*Russell Benedict,* for the appellant.

*George G. De Witt, Jr.,* for the respondent.

BARRETT, J.:

I concur with the presiding justice in regard to the alleged deed of September 9, 1815. But I am unable to concur as to the power of sale. My views upon the latter head are these : Immediately upon the death of Maria Tweedy her children undoubtedly took the *corpus* of the trust estate, namely, the one equal fourth part of the original residue devised and bequeathed by Joseph N. Lord to his executors in trust for the benefit of this daughter, Maria.

They so took, however, subject to, and not freed from, the general power in trust specified in the ninth clause of Mr. Lord's will. There is no expression anywhere in this will suggestive of an actual partition of the residue for the trust purposes, or of any division, save in the legal sense essential to the validity of the trust. Indeed, the testator's plan seems to be directly opposed to any such preliminary partition, or to the separation and setting apart in specie of the *corpus*

of each of the four trust estates. This is the opening language of the eighth clause : "All the rest, residue and remainder of my estate, both real and personal, * * * I dispose as follows, that is to say :" Then follow the four trusts, each of one equal fourth part thereof. Not a word here about conversion and actual separation of the product into four parts; on the contrary, in the next clause (the ninth), we find a provision authorizing the executors to permit any part of the estate invested at the time of the testator's death *to remain and continue in the same state of investment* for any of the purposes of the will so long as such executors approve ; a most unlikely provision if an early conversion for the purpose of a practical division or to facilitate partition were contemplated. This ninth clause in no wise limits the power of sale to the respective trust estates. It is broad, general and comprehensive, authorizing the executors, at their discretion, *from time to time or at any time or times*, to sell and dispose of the whole or any part or parts of the testator's estate, both real and personal. Thus the power plainly operates throughout upon *the undivided residue* for which the respective trust estates are to be practically worked out. In other words, the power is general and unlimited, operating upon the totality of the residue, and not merely upon each of the undivided trust estates. And thus it serves a purpose useful and beneficial to the testator's estate, for it enables the parties in interest to avoid many of the difficulties of conveyance attendant upon tenancies in common, especially where some of the tenants are infants. If, therefore, the power is general, operating upon the entire residue as such, there is no good reason why it should cease, upon the falling in of one of the trusts, as to *the still unseparated* one equal quarter immediately vested in the children of Maria Tweedy. The falling in of that trust at once necessitates a division of the estate, so that the children of Maria Tweedy may receive their one equal quarter freed from the remaining trusts; and it was doubtless largely to facilitate this very division and distribution, and to save the beneficiaries the expense of partition proceedings, that the testator gave his executors this continuous and unlimited general power. Maria Tweedy had eight children living at the time of her death. They were then of age, it is true, but several of them must have been minors at the date of the execution of Mr. Lord's will, for

Mrs. Tweedy was married in 1832 or 1833, while Mr. Lord died in 1857, leaving this will, dated March 27, 1856; and her husband, the present defendant, testified upon the trial that all the property has been sold by him (as sole surviving executor) since his wife's death, "the last of it at auction a short time ago *to close up the estate.*"

Upon all these facts the case on this head comes within the principles enunciated in *Crittenden* v. *Fairchild* (41 N. Y., 289); *Kinnier* v. *Rogers* (42 id., 531) and *Skinner* v. *Quin* (43 id., 99); and it is not affected by the rule laid down in *Bruner* v. *Meigs* (64 id., 506), and other cases which have been cited of a similar character, for the reason that there the power, as said by ALLEN, J., was, "*in terms*, restricted and limited, in point of time, to the continuance *of the respective trusts.*" This was further emphasized as follows: "It is a *several* power in respect to the property held under the respective trusts, and not a general power embracing the whole estate, and to be exercised so long as any one of the trusts continues, or until a final partition of the estate is made."

One word more. I am unable to perceive the force of the suggestion that the present power ceased the moment this trust estate vested in the children of Maria Tweedy, because of the provision in the ninth clause that "in the meantime," that is, until the exercise of the general power immediately preceding, the executors are to collect and receive the entire rents of the estate. The argument is that the executors cannot receive the rents of the one equal quarter in question, because, upon the vesting thereof in the children of Maria, they alone could collect such rents. This reasoning overlooks the fact that in the preceding eighth clause there is a general power given to the executors to collect and receive the rents, income, etc., of each equal fourth part of the general residue. So that this subsequent power in the same direction must be treated as additional, and not as mere surplusage. If additional, it plainly contemplated a contingency like the present, where what formed part of the undivided and unconverted residue has become vested in the children of Maria Tweedy and this executor as tenants in common. Now, as these children, pending partition (or distribution through the simpler process of an execution of the power), cannot well collect from the tenant one-quarter of the rent, and this executor three-quarters; and as some rent must necessarily accrue between Maria Tweedy's

death and actual division or distribution, authority is thus given to the executor to collect, "in the meantime," the whole of this undivided, and, so far as the tenant is concered, indivisible rent. The word "meantime" thus refers to the execution of the power, and to its execution in just such a manner as the present, while the additional authority conferred upon the executor cannot, under such circumstances, be void, for it isreally nothing more than he would have had without it, as tenant in common with the children of Mrs. Tweedy.

While, therefore, entirely agreeing that the defendant must be able to give the plaintiff a marketable title, I am convinced that it would frustrate the clear purpose of the testator to hold that he cannot do so by the due execution of this power. In my judgment, therefore, this judgment should be affirmed, with costs.

BARTLETT, J., concurred.

VAN BRUNT, P. J. (dissenting):

This action was brought to recover $1,000, the amount paid by the plaintiff under a contract for the sale to him by the defendant of the premises 61 Bayard street, in the city of New York, it being alleged that the title offered was defective in two particulars: First. That an undivided third interest in said premises is vested in the heirs-at-law of Maria Burnham; and, second, that the defendant has no power, as executor of the will of Joseph N. Lord, deceased, to sell and convey an undivided fourth part or interest which, on the death of Maria Tweedy, a daughter of said testator, vested in possion in her lawful issue.

In 1815 the premises in question were owned in fee by the six children and heirs-at-law of George Thompson, deceased, namely, George Thompson, John G. Thompson, Elizabeth Pinckney, the wife of Elijah Pinckney; Dolly Lord, the wife of Joseph N. Lord; Magdalene Crook, widow, and Maria Burnham, the wife of John A. Burnham. The first four of the heirs above named and their respective wives and husbands executed a deed to Magdalene Crook of two undivided third parts of said premises. This deed is dated September 20, 1815, and is, in form, a bargain and sale deed, with a covenant against grantors' acts, and expressing a consideration of $2,666.64. This deed was signed by all the grantors and acknowledged the day of its date, Maria Burnham, the only heir of George

Thompson not a party to it, proving the identity of two of the grantors to the officer who certified the acknowledgment. This deed was recorded on the 6th of October, 1815, for and at the request of Magdalene Crook. Magdalene Crook thus, upon the execution of this deed, became the owner of five-sixths of the property. In 1817 Magdalene Crook conveyed one-half of the premises to Joseph N. Lord in trust for the benefit of her sister, Maria Burnham. In 1825 the trust estate was reconveyed to Magdalene Crook, and Maria Burnham also conveyed to Magdalene Crook the undivided sixth part inherited by her for the consideration of $666.67. The last two deeds were acknowledged on the 7th of February, 1825, and on the same day Magdalene Crook made her will. The will gives a life estate to Maria Burnham and a second life estate to John Francis Burnham (both of whom are dead) and remainder in fee to Joseph N. Lord, the defendant's testator. Joseph N. Lord died in 1857, when the defendant found among his papers certain deeds. In 1865 he observed four unrecorded deeds, one of which was a deed bearing date September 9, 1815, and is in form a deed with full covenants and warranty from the same eight grantors who, on September 20, 1815, executed the deed to Magdalene Crook, expressing the same consideration and conveying the same undivided interest to Magdalene Crook and Maria Burnham. This deed is only partially executed by the grantors named in it, the wives of George and John G. Thompson not having signed it. The defendant then caused this deed and the others to be recorded on the 6th of September 1865.

Joseph N. Lord left a will by the eighth clause of which he disposes of his residuary estate as follows: One-fourth part thereof he gives, devises and bequeaths to his executors in trust, to rent and invest and to collect and receive the rents, issues and profits, and apply the same to the use of his daughter Maria Tweedy, for and during her natural life, and upon her death to convey and pay the said fourth part unto and among such of her lawful issue as may be then living, and the issue of any who might be then dead. The clause also contained a similiar devise of one-fourth of the residuary estate to the executors in trust for the benefit of each of three other daughters of the testator, and a similar gift of each fourth to the issue of each daughter.

The ninth clause is as follows:

" *Ninth.* I hereby authorize and empower my said executors and the survivors and survivor of them, and such and whichever of them as shall act, at their or his discretion from time to time, and at any time or times to sell and dispose of the whole or any part or parts of my estate, both real and personal, at public auction or private sale, * * * and in the meantime my said executors and the survivors and survivor, and such and whichever as shall act, are and is hereby authorized to collect and receive the rents of the whole and every part of my real estate."

Maria Tweedy, the first life beneficiary under the eighth clause of the will, having died leaving children, the trust for her benefit has terminated, and the undivided fourth of the real estate of the testator forming part of the capital of such trust is vested in the children of Maria Tweedy in possession, and one of the questions involved is whether such children took such real estate subject to the general power of sale given to the executors in the said ninth clause.

It is clear that the alleged deed of September 9, 1815, is wholly void and inoperative for want of delivery. In order that there should be a due execution of a deed, it must not only be sealed and signed, but it must also be delivered; in fact, delivery being the only thing which could make a deed operative. Hence the significance of the clause contained in the clause, and signed by witness in all old deeds, " signed, sealed *and delivered* in presence of." Neither the sealing, nor the signing, nor the acknowledgment of the deed, is of any effect, so far as making the deed operative and effectual is concerned, unless they are followed by delivery.

It seems hardly necessary to cite authorities to sustain this elementary proposition, but the cases of *Fisher* v. *Hall* (41 N. Y., 416) and *Bryant* v. *Bryant* (42 id., 11) sufficiently establish it. It is true that where a deed appears upon the record the recording is regarded as *prima facie* evidence of delivery ; but it is also true that such evidence of delivery may be rebutted even where the recording is apparently regular.

In the case at bar, the deed having remained in the possession of one of the grantors for fifty years after it was sealed and signed by a portion of the grantors, and the fact that another deed was signed, sealed and delivered by all the grantors of the same premises within

a few days thereafter, raises the inevitable conclusion that the first deed was never intended to be operative and had never been delivered.

It is true that a court of equity will not impose a doubtful title upon a purchaser, and that the purchaser is entitled to a marketable title, and that a title open to a reasonable doubt is not a marketable title; and that the court cannot make it such by passing upon an objection, dependent upon a disputed fact or a doubtful question of law, in the absence of the party in whom the outstanding rights are vested. But in the case at bar no such rules are applicable as to the point now under consideration.

It is apparent upon the very face of the record itself, upon the face of the deeds themselves, that the alleged deed of September 9, 1815, was never executed by all the grantors and never recorded until fifty years after the subsequent deed had been recorded, and then such deed of the 9th of September, 1815, was recorded without any authority in the party making the record to cause the same to be recorded, and also that Maria Burnham knew of the existence of the second deed, and that she was not a grantee named therein, which is evidenced by the fact that the indentity of two of the grantors in said deed was proven to the master in chancery by her oath and examination. From the foregoing uncontrovertible facts no other conclusion can be drawn but that said deed of the 9th of September, 1815, had never been delivered and never became operative.

The next objection is that the defendant, as surviving executor of Joseph N. Lord's will, had no power of sale as to one-fourth of the premises in question. That the power vested in the defendant under the will of Lord ceased on the death of Maria Tweedy, and the title to her undivided share passed to her children not subject to the exercise of the power of sale by the executor.

This objection seems to raise a question in regard to which an authoritative determination cannot be made in the absence of the children of Maria Tweedy, deceased. It may be claimed, with great force, that this power of sale as to any portion of the estate terminated upon the cessation of the trust as to that portion. It is to be observed that the testator makes separate trusts in favor of his four children, giving one fourth of his property to his executors in trust

to rent and invest, and to collect and receive the rents, issues and profits thereof, and to apply the same to the use of one of his daughters for and during her natural life, and upon her death to convey and pay the said fourth part unto and among her lawful issue who may be then living, and the issue of such as may be then dead. Upon the death of any one of these daughters the estate held in trust for such daughter descended immediately to her children. (1 R. S., 730, § 67 ; *Matter of Livingston*, 34 N. Y., 567.)

Now, under the power of sale, the executors are authorized to sell, in their discretion, from time to time, and at any time or times, the whole or any portion of his estate, both real and personal. But this power is coupled with the provision that, in the meantime, that is, until the sale, his executors are authorized to collect and receive the rents of the whole and every part of his real estate. Now, it cannot be claimed that after a portion of this estate has descended to the grandchildren of the testator that the executors are entitled, by force of the power contained in the will, to collect the rents and profits thereof. This portion of the estate is relieved from the trust. The executors, by virtue of the will, therefore, in such case could not collect the rents. The owners of the fee would be entitled to collect the rents. It is true that it is claimed by the respondents that, as tenants in common, the executors would have a right to collect the rents. But it is clear that they could not do so by virtue of this clause contained in the will. What did the testator mean? Did he not mean that as long as the property remained unsold, and the trust continued, his executors should collect the rents?

It seems to us that this question is of so doubtful a character that, unless upon a proper action brought, having all the parties to be affected by the adjudication before the court, no authoritative determination can be given. It would seem, therefore, in view of this condition of things, that the title is not free from reasonable doubt. The plaintiff, therefore, should not be compelled to take this title and hereafter be called upon to defend the same against the claim of the grandchildren of the testator.

Under all the circumstances of the case, the plaintiff was entitled to recover.

The judgment should, therefore, be reversed and a new trial ordered, with costs to appellant to abide event.

Judgment affirmed, with costs.