## FORMAN v. YOUNG et al. (No. 6985.)

(Supreme Court, Appellate Division, First Department. March 26, 1915.)

TRUSTS ⬤➞191—UNEXECUTED TRUST—VESTED REMAINDER—TRUSTEE'S POWER OF SALE.

    Testator, dying in 1880, devised the residue of his estate to his executors and survivors, in trust to pay one-half of the rents and income to his wife, to invest the remainder and pay the income to his four children in equal shares, except as to one, and, on the death of either of his three children, their issue to take by representation, and authorized his executors to sell any realty, or to divide it among his children, and expressed an intent to leave the right of partition to their discretion. The widow

died in 1898, and a son in 1899, leaving a son, defendant, who thereby acquired a vested remainder interest in the trust estate, and thereafter, the executors having died without executing the power of sale, the Supreme Court appointed a trustee and directed him to sell the realty. 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 68, then in force, providing that, on the death of the surviving trustee of an express trust, the estate should not go to his heirs or representatives, but that the trust, if unexecuted, should vest in the Court of Chancery, with all the powers of the original trustee, to be executed by some person appointed therefor, in 1900 had become Real Property Law (Laws 1896, c. 547) § 91, and, as amended by Laws 1902, c. 151, became Real Property Law (Consol Laws, c. 50) § 111; and 1 Rev. St. (1st Ed.) pt. 2, c. 1, tit. 2, § 101, providing that, where a power in trust is created by will, and the testator omits to designate by whom the power is to be exercised, its execution shall devolve on the chancery court, became Real Property Law (Laws 1896, c. 547) § 141, and later Real Property Law (Consol. Laws, c. 50) § 161. *Held*, that the trustee appointed by the court had the power of sale conferred upon the original executors in order to carry out the testamentary disposition.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 243; Dec. Dig. ☞191.]

Appeal from Special Term, New York County.

Action by Gertrude A. Forman against William H. Young and others. From part of a judgment entered upon a decision in an action to construe a will, defendants appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Brush & Crawford, of New York City (John J. Crawford, of New York City, of counsel), for appellants.

David B. Simpson, of New York City (Harold Swain, of New York City, of counsel, and Hamilton C. Rickaby, of New York City, on the brief), for respondent.

CLARKE, J. The action was brought to procure the construction of the will of Anna P. Burgess. An incidental question, which was submitted to and decided by the Special Term, and is now the only matter before us upon this appeal, arose in the manner following:

In paragraph VII of the complaint it is alleged:

"That in and by the sixth paragraph of said will testatrix provided, among other things, as follows: 'After the decease of my husband, Dr. Daniel M. Burgess, I give and devise to my said niece Gertrude Forman the house and lot known as number 168 East Seventy-Ninth street, borough of Manhattan, city of New York, to have and to hold the same for and during her natural life, and after her death, I give and devise the same to her two sons now living, share and share alike.' That at the time of the death of said Annie P. Burgess there was a past-due bond and mortgage of $18,000, executed by said Annie P. Burgess on said premises. That plaintiff is advised that in and by the terms of said will it was the intention of said testatrix that plaintiff and her two sons should take the property free and clear of said mortgage. That plaintiff has called upon the executors and trustees to pay off said bond and mortgage out of the other assets of the estate, but they have refused to do so, and the said bond and mortgage now remain past-due obligations of record against said premises."

The defendant William H. Young, who is a grandson of John S. Young, set up in his answer, by way of a partial defense, a claim to an

undivided one-eighth interest in the premises by virtue of a devise in the will of his grandfather, which interest he alleged had not been divested by the attempted sale of said house and lot to Mrs. Burgess by the trustee appointed to execute the unexecuted trusts under his grandfather's will. Said claim affects 46 other pieces of property sold by said trustee. The learned Special Term decided against said defendant, and from that portion of the judgment he appeals.

By his will John S. Young, after certain specific bequests and devises, provided as follows:

"Thirteenth. I give, devise and bequeath all the rest, residue and remainder of my property and estate, real and personal, of every name, nature and description, unto my executrix and executors, and the survivors and survivor of them or such of them as shall act for the time being, in trust, as follows: To pay my said wife one-half part of the net rents and income of my real estate as hereinabove directed. To invest and keep invested all the said rest, residue and remainder of my said personal estate, or the proceeds thereof, and to pay over the income thereof together with the remaining half part of the net rents and income of my real estate to and among all of my said children hereinbefore named in equal share for and during their respective lives, excepting alone from this provision the portion or share of my son John D. Young, which shall be disposed of as follows: I direct my executors to pay one half part of the share of the rents and income of which the said John D. Young would be entitled to Josephine Young, wife of the said John D. Young, for and during the life of the said John D. Young, for the support and maintenance of herself and her daughter, Gertrude, or in case of the death of said Josephine before her said husband, then to apply the same to the education, support and maintenance of the said Gertrude and to pay and apply the other half part of said share of rents and income or so much thereof as may be necessary to the use and benefit of my said son John D. Young for his comfortable and suitable support and maintenance, or if in the exercise of the sound discretion my said executors should deem it advisable so to do, to pay to my said son the whole of said half part of his share of said rents and income or such part thereof as they may deem proper. Upon the decease of either of my said children, Anna P. Bogert, Caroline Amelia Brundage, or William Henry Young, leaving descendants, her or him surviving, I give and bequeath and devise unto such descendants the one equal fourth part of said rest, residue and remainder of my personal estate and the one equal fourth part of the one-half part of my real estate above referred to and of which the rents and income are above directed to be paid for the benefit of the ancestor of such descendants, they to take by representation absolutely.

"Upon the decease of my said son John D. Young, I give, devise and bequeath the one equal fourth part of said personal estate and the one fourth of the one-half part of my real estate above referred to (being the portion directed to be applied to the use of my said son and his wife and daughter) to such of my other children as may be living at that time in equal shares absolutely. In case any of my said children shall die without leaving lawful issue then I give, devise and bequeath the share of which such child is to receive the rents and income as above directed to my surviving children in equal shares absolutely.

"Fourteenth. I hereby expressly authorize and empower my said executrix and executors or such of them as may act for the time being whenever in their discretion it shall be necessary or expedient to sell any or all of my real estate either at public or private sale and to execute and deliver good and sufficient deed or deeds for the same. The proceeds of such sale to take the place and to be disposed of in the same manner as the real estate so sold would have been under and by this will.

"And I further expressly authorize and empower my said executrix and executors or such of them as shall act for the time being, if in their discretion they shall deem it beneficial for these interested instead of selling my real estate, for the purpose of partition, to allot and divide to and among my said

children and their descendants any part thereof in such manner that my said children and their descendants shall take and receive the portions and interest hereinabove given and devised to them, at such time and times as they shall become entitled to receive the same, it being my will and intention to leave the right and manner of such partition and allotment wholly to the discretion of my said acting executrix and executors."

The testator's son William died in 1899, leaving one descendant, the appellant, who was then an infant of the age of 10 years. The testator's widow died in 1898, and the son John in 1892, intestate, leaving him surviving as his only heir at law the plaintiff in this action, his daughter. All the persons named in the will as the executors thereof died without having executed the power of sale. Thereafter William R. Wilcox, on December 8, 1899, was duly appointed by the Supreme Court to execute the unexecuted trusts of the will, and by decree duly made and entered was directed to sell the real estate of said John S. Young, deceased, including the premises 168 East Seventy-Ninth street aforesaid. Mr. Wilcox, as such trustee, sold various parcels of real property. Among them, the premises above mentioned were sold to Annie P. Bogart, subsequently Annie P. Burgess. It is stipulated that, if the power of sale could be exercised by a trustee appointed by the Supreme Court, all the proceedings were in all respects regular.

This sale took place in 1900, when the appellant was 11 years of age, and a portion of the proceeds was paid over to his mother as his general guardian. Two days after the appellant became 21 years of age his guardian paid over to him all the moneys in her hands as such guardian, which payment included the moneys or a part thereof received by the guardian from the substituted trustee. The appellant claims that when the sale was made the trust as to the undivided one-eighth interest in question had terminated, and the appellant was vested with the entire legal and equitable title thereto; and the power, being expressly made to depend upon the will of the donees, had been extinguished by their deaths.

Undoubtedly at the time of the sale, by the death of certain of the cestuis que trust, William H. Young had acquired a one-eighth undivided interest in the trust estate. But that trust estate still existed, and the trust thereunder had not been fully executed. I think it is quite clear that, if the sale had been made by the executors as trustees, there could be no question but that it was legal. In Cussack v. Tweedy, 126 N. Y. 81, 26 N. E. 1033, the will under consideration gave the residue of testator's property to his executors in trust for the benefit of his four children, creating four separate and several trusts, each covering an undivided one-fourth of the residue. The trusts were to pay the income to each child for his or her life, and at his or her death to convey such share, with any unapplied rents, to such child's issue. Each one of the separate trusts was for a single life, the termination of which by death ended the trust and vested a fee in possession in the remainderman. After the creation of these trusts the will conferred a power of sale from time to time and at any time or times to sell and dispose of the whole or any part or parts of the estate. Judge Finch said:

"The sole surviving executor is the present defendant, who as such tendered a deed duly executed under and in pursuance of the authority of the will.

By the death of one of the daughters an undivided fourth of the estate had vested in her issue, and the purchaser claims that the power of sale as to such one-fourth ended with the determination of the trust, while the executor claims that the power survived and would continue until all the trusts were ended. We have held, on the one hand, that such a power of sale, when general and unlimited and unrestricted, does not become inconsistent with the devise of a vested estate in the same property (Crittenden v. Fairchild, 41 N. Y. 289; Kinnier v. Rogers, 42 N. Y. 531; Skinner v. Quin, 43 N. Y. 99), and, on the other hand, that where the power is in terms restricted and limited in point of time to the continuance of the respective trusts the ending of the trust ends also the power (Bruner v. Meigs, 64 N. Y. 506). It would be difficult to frame a power of sale more broad and unrestricted than the one before us. It covers not merely the residue embraced in the trust, but the whole estate, and is unlimited as to time. It necessarily falls under the authorities first cited, unless we can find in its terms some definite indication that all the purposes for which the power was given necessarily ended when any one of the four trusts terminated, and that the remainders were given, not subject to the power, but entirely freed from it. There seems to have been two purposes which the power was intended to accomplish: One to enable changes to be made in the capital of the estate with a view to the safety of investments and an increase of the earning power; and the other to facilitate an ultimate division without the expense and delay of a partition. Neither purpose was bounded by the limits of a single one of the trusts. Each might remain unaccomplished, though a single one of the trusts had fallen in. * * * We are thus of opinion that the power subsisted beyond the death of Mrs. Tweedy, and that the excutor's deed was good."

The power in the will under consideration is as broad as that contained in the will interpreted in the Cussack Case. Indeed its exercise is expressly contemplated after vesting, because it provides:

"And I further expressly authorize and empower my said executrix and executors * * * if in their discretion they shall deem it beneficial for those interested instead of selling my real estate, for the purpose of partition, to allot and divide to and among my said children and their descendants any part thereof, * * * it being my will and intention to leave the right and manner of such partition and allotment wholly to the discretion of my said acting executrix and executors."

As there could be no partition of the real estate until vested, because, ad interim, it was a trust estate in the hands of the trustees, it is even more obvious than it was in the Cussack Case that it was the intention of the testator that the power to sell should survive vesting of title in the remaindermen. All of the donees of the power, namely, the executrix and executors, the trustees under the will, having died without the execution thereof, the trusts provided for in the will were left unexecuted.

At the time of the execution of the will of John S. Young, namely, March, 1879, and at the time of his death, June 24, 1880, and at the time of the probate of the will July 3, 1880, section 68, title 2, chapter 1, part 2, of the Revised Statutes was in force which provided:

"Upon the death of the surviving trustee of an express trust, the trust estate shall not descend to his heirs, nor pass to his personal representatives; but the trust, if then unexecuted, shall vest in the Court of Chancery, with all the powers and duties of the original trustee, and shall be executed by some person appointed for that purpose, under the direction of the court."

Section 101, title 2, chapter 1, part 2, Revised Statutes, was as follows:

"Where a power in trust is created by will, and the testator has omitted to designate by whom the power is to be exercised, its execution shall devolve on the Court of Chancery."

At the time of the appointment of. Mr. Wilcox and the sale of the property by him in 1900, section 68, supra, had been carried into the Real Property Law (chapter 547 of the Laws of 1896), where it appeared as section 91:

"On the death of the last surviving or sole trustee of an express trust, the trust estate shall not descend to his heirs nor pass to his next of kin or personal representatives; but in the absence of a contrary direction on the part of the person creating the same, such trust, if unexecuted, shall vest in the Supreme Court, with all the powers and duties of the original trustee or trustees; and shall be executed by some person appointed for that purpose under the direction of the court, but who shall not be appointed until the beneficiary or beneficiaries shall have been brought into court by such notice and in such manner as the court or a justice thereof may direct."

Section 101, supra, at that time had become section 141 of the Real Property Law without change, except the substitution of the words "Supreme Court" for "Court of Chancery."

Section 91 was amended by chapter 151 of the Laws of 1902, by adding provisions in regard to security, accounting, and compensation. Said section 91 as amended became section 111 of the Real Property Law (chapter 50, Consol. Laws; chapter 52, Laws of 1909), and was subsequently amended by chapter 216, Laws of 1911. Section 141 of the former Real Property Law is now section 161 of the Real Property Law (chapter 50, Consol. Laws; chapter 52, Laws of 1909).

In Delaney v. McCormack, 88 N. Y. 174, in an action to construe a will and for the appointment of a trustee to carry out its unexecuted provisions, held, that the will created a general power in trust, the execution whereof was imperative (1 R. S. 732, § 74, 77; Id. p. 734, §§ 94, 96); that upon the death of the surviving trustee his powers and duties became vested in the court, and might be exercised by some person appointed by it for that purpose (1 R. S. 734, § 102; Id. 730, § 68).

In the Matter of Runk, 200 N. Y. 447, at page 462, 94 N. E. 363, at page 369, Judge Werner, writing for a unanimous court said:

"There are several reported cases decided in the Supreme Court, * * * in which it was held that upon the death of a last surviving trustee of a trust that remains unexecuted, the trust, by virtue of the express terms of the statute, devolves upon the court, which is thereupon authorized to appoint a person to execute the trust, but that no power exists to appoint a new trustee. Brater v. Hopper, 77 Hun, 244 [28 N. Y. Supp. 472]; Faile v. Crawford, 30 App. Div. 536 [52 N. Y. Supp. 353]; Wildey v. Robinson, 85 Hun, 362 [32 N. Y. Supp. 1018]; Jewett v. Schmidt, 83 App. Div. 276 [82 N. Y. Supp. 49]; and Matter of Gueutal, 97 App. Div. 530 [90 N. Y. Supp. 138]. The theory upon which these cases were decided is clearly stated by the late Mr. Justice Patterson in Matter of Gueutal, as follows:

"'There is no authority in section 91 of the Real Property Law * * * for appointing a "substitute trustee" by that name. In such a case as this, the trust, if any, has devolved upon the court, and it has power to appoint some one as its hand and representative to execute the unexecuted parts of a trust, with all the powers and duties of the original trustee, but under the direction of the court.' [97 App. Div. 531, 90 N. Y. Supp. 138.]

"It seems to us that these cases place too much emphasis upon mere nomenclature as indicating a distinction between persons appointed to execute trusts which have devolved upon the court and persons appointed by last will and

testament. There is, of course, a technical distinction but no real difference. The duties of such a person appointed by the court are the same, whether he is called 'the right hand of the court,' or is referred to as a 'substituted trustee'; and that seems to have been the view entertained by this court in Matter of Carpenter, 131 N. Y. 86 [29 N. E. 1005], where a person appointed to succeed a sole surviving trustee of an unexecuted trust was denominated 'a new trustee.' "

In Lahey v. Kortright, 132 N. Y. 450, 30 N. E. 989, testator created certain trusts, appointed two persons executors and trustees, and provided in his will:

"I give my executors full power and authority in regard to the investments of my said estate, and for this purpose they are authorized to sell and convey any or all of my real and personal estate, and after the payment of my debts, as hereinbefore provided, to invest the proceeds in other real estate or in personal securities as they, in their discretion, may deem most for the interest of the parties interested in my estate."

The persons named in the will renounced. Letters of administration with the will annexed were issued to the widow and another person. By judgment in an action for partition and for the appointment of a trustee in place of those who had so renounced one Collins was appointed such trustee. Several years afterwards said trustee was permitted to surrender the trust, and was released and discharged therefrom, and subsequently Lawrence M. Kortright was appointed trustee of the share of his brother, Gouverneur Kortright, and the latter was appointed trustee of the respective shares of the widow and Lawrence M. The court said:

"The will, from which the power of the trustees is derived, created an express trust within the meaning of the statute, as it provided for the receipt by them of the rents and profits or income of lands and the payment of the same over to the beneficiaries during their lives. 1 R. S. 728, § 55. And for that purpose the trustees took title to the lands embraced within the trust. Id. 729, § 60; Brewster v. Striker, 2 N. Y. 19; Leggett v. Perkins, 2 N. Y. 297. * * * It is, however, insisted on the part of the plaintiff that neither the trustee, Collins, nor his successors in that relation, took any power of sale under the will. The determination of this question depends upon the construction and application of the provisions of the eleventh clause. It is forcibly argued by the learned counsel for the plaintiff that the power of sale given by such clause is not attached to the trust before mentioned, and has no relation to its execution, but that it was intended as a power to the executors as such, to be executed only prior to the division of the estate into the shares provided for, and, as such, was one of personal confidence, and could be exercised by none other than the persons designated as executors by the testator, and that when they failed to assume such relation the power became inoperative. It would be less difficult to adopt the view that this was a naked power, if it were not for the trust created by the preceding provision of the will. But the power of sale given by this provision does not embrace within its terms as expressed any purpose necessarily executorial; and for the discharge of their duties as executors no reason appears for the exercise by them of the power of sale for the purposes of investment of the proceeds. It is true that the expression in the eleventh clause in reference to the payment of debts of the testator has relation to the duties of the executors, and the power of sale is in terms broad enough to cover his entire estate. But it did not purport to have been created for use in making the division provided for of the estate. No power was given the executors as such to withhold distribution of the personal property (if any should remain after payment of the debts), or to delay the division of the real estate, or to withhold from the beneficiaries the shares which they were entitled to take and appropriate

to their own use. It therefore does not appear to have been intended that the power of sale should not survive the division of the estate. The purpose, as given for its execution, had relation to the investment of the proceeds in other real estate or personal securities. While a mere power of sale is discretionary, and does not survive the donee of the power, it is otherwise when the power is coupled with a trust. Then it is taken by the trustees, and through the court of equity may be transmitted to their successors in the trust. In the present case the power of sale, independent of and disconnected with the trust to receive and apply the rents and profits, would not have survived the renunciation of the persons named as executors. But by reference to the provisions of the will, as well that creating the power of sale as other portions, to ascertain its applicability contemplated by the testator, it seems that this power in its practical and essential purpose was intended to be applicable to the subject of the trust, which was to continue during the lives respectively of the beneficiaries. And being thus annexed to such trust in aid of its execution it would be taken by the trustees. In that view of its relation it is unnecessary to further pursue inquiry into the character of the power. Leggett v. Hunter, 19 N. Y. 445. The cases cited upon the contention that this power was discretionary, and could not be taken by the substituted trustees, do not seem to us to have any necessary application to the present case."

The court then considered Coleman v. Beach, 97 N. Y. 545; In re Bierbaum, 40 Hun, 504; Sweeney v. Warren, 127 N. Y. 427, 28 N. E. 413, 24 Am. St. Rep. 468; Mott v. Ackerman, 92 N. Y. 539—distinguishing them upon the ground that there was no trust with which the power was connected and that the power was purely personal and discretionary.

"It is further urged that although the power of sale may have been by the will vested in the trustees there appointed, if they had assumed the trust, it was not conferred upon the defendant trustees because: (1) Their appointment was made by the court in the exercise of its general equity powers in that respect and not pursuant to the statute upon the subject; and (2) that the power of sale was not included in that conferred upon them by the orders of appointment. By the judgment of the court Collins was appointed trustee under the will, and as such trustee invested with power and authority to execute the trusts created by it. And upon his petition to be relieved from the trust he was, by order of the court, permitted to surrender his trust and was discharged from liability, etc. This was a resignation within the meaning of the statute pursuant to which the defendants were appointed as new trustees (1 R. S. 731, § 71), and by the terms of the orders appointing them they respectively were appointed trustees under the will to hold the shares set apart by the commissioners for the benefit of the beneficiaries, and to hold the same in trust for them. The court did not by these orders assume to limit in terms the power of the new trustees or definitely define the manner they should execute the trust. And by reference to the entire record of the proceedings in that behalf it seems that the purpose was to substitute them as successors to Collins in the trust created by the will, from which, through the action of the court in placing them in that relation, they derived their powers. Farrar v. McCue, 89 N. Y. 144; Royce v. Adams, 123 N. Y. 402 [25 N. E. 386]; Nugent v. Cloon, 117 Mass. 219."

In Smith v. Floyd, 124 App. Div. 277, 108 N. Y. Supp. 775, the majority of this court held that, when testamentary trustees are empowered "to apply such portion of the capital of the trust funds as they may deem advisable to the use" of beneficiaries named, the discretionary power does not pass to a substituted trustee appointed by the court, for the discretion was wholly personal to the trustees first named, and the exercise thereof is not necessary to the execution and furtherance

of the trust. The cases on the subject are collateral in the two opinions written. The majority opinion said:

"The question to be determined in each case is as to the test which the donor of the power intended should be determinative as to its exercise. If she made that test solely the personal discretion of the trustees, it is clear that the power cannot be delegated or pass to another, for that would be to substitute the discretion of another for that discretion which the donor relied upon. If, however, the test upon which the exercise of the power is made to depend is some fact which can be as well ascertained by the court, or by a substituted trustee, as by the trustee originally named, it may well be held that the power may be devolved, for thus can the intention and desire of the donor be fulfilled. * * * There are undoubtedly cases, in which a substituted trustee has been permitted to exercise power of sale and other powers incident to the execution of a trust, which have involved the element of personal discretion (Haendle v. Stewart, 84 App. Div. 274 [82 N. Y. Supp. 823]; Lahey v. Kortright, 132 N. Y. 450 [30 N. E. 989]; Matter of Wilkin, 183 N. Y. 104 [75 N. E. 1105]). In all of these cases, however, it was necessary that the power should be exercised in order that the trust might be executed, and the devolution of the power has been upheld in furtherance of the trust."

In the dissenting opinion of Mr. Justice Ingraham, upon which the case was reversed (193 N. Y. 683, 87 N. E. 1127), it was said:

"There is coupled with this power a power of sale of the real property of the testatrix. * * * Language which would seem to indicate a dependence upon the personal discretion of the trustees much more than the language in relation to the advancement of a portion of the property for the support of her daughter. Yet there could be no doubt, I think, that a substituted trustee could exercise this power. The power given was to be exercised in both cases during the whole existence of the trust, which was not limited upon the lives of the trustees, and the necessities of the daughter would increase as she became older. In determining whether or not a testatrix intended that a discretion with which her trustees were vested was one that must be exercised by the trustee named, and was not intended to be exercised by a substituted trustee, attention, I think, should be given to the nature and extent of the power and the period during which it was contemplated that it would be necessary to exercise the power. It seems to me quite evident that the creator of the trust could not have intended to limit the exercise of the power to the continuance in office of the trustees originally appointed, as such a construction would defeat the express intention of the creator of the trust."

In Burtis v. Trowbridge, 142 App. Div. 449, 126 N. Y. Supp. 1101, where a testatrix gave all her property to her executor eo nomine in trust to pay debts and legacies, with direction to hold the residue and pay the income to her husband for life, with remainders over, and there were no debts, and the personal property greatly exceeded the legacies, it was held that a power given to the executor eo nomine to "sell * * * and do all acts to carry out and execute the provisions and trusts" is not discretionary and passes to a substituted trustee, who can convey a good title. Mr. Justice Miller said:

"The question involved is whether the power of sale was discretionary, or whether it was coupled with the trust and survived the payment of debts and legacies. The mere fact that it was given to the executor eo nomine is of no consequence, because nowhere in the will is the word 'trustee' used. The property was given to the executor in trust for three purposes, two of which were * * * executorial. But it is manifest that the testatrix did not anticipate the exercise of the power of sale either to pay debts or legacies, as she had no debts, and left personal property many times in excess of the two small legacies. The trust for the third purpose was to continue for an indefinite time, i. e., during the life of the husband, and the testatrix may well

have anticipated that, in the execution of it, it might become necessary or convenient to sell the real estate. At any rate, by a process of elimination it becomes evident that that was the only purpose for which the power could have been given. It necessarily follows that the power passed to the substituted trustee, and that his grant effectually conveyed the title. Lahey v. Kortright, 132 N. Y. 450 [30 N. E. 989]."

In the case at bar, the trust, being unexecuted, vested in the Supreme Court, with all the powers and duties of the original trustee; and so it lay within the power of the court to appoint a trustee to execute the unexecuted trusts created by the testator. To that substituted trustee was intrusted the power of sale which had been conferred upon the executors by the will of the testator, in aid of and for the purpose of carrying out the testamentary disposition of his property in the form of a trust estate.

As it is stipulated that, if the power of sale could be exercised by a trustee appointed by the Supreme Court all the proceedings were in all respects regular, this court having reached the conclusion that such power could be so exercised, it follows that the judgment appealed from should be affirmed, with costs and disbursements to the respondent. All concur.