In the Matter of the Construction of the Will of MARY E. JONES, Deceased. THEODORE B. KLAPPER, as Trustee under the Will of MARY E. JONES, Deceased, et al., Respondents; ROSALIE G. JONES, Appellant.

In the Matter of the Estate of MARY E. JONES, Deceased. THEODORE B. KLAPPER, as Trustee under the Will of MARY E. JONES, Deceased, Respondent; ROSALIE G. JONES, Appellant.

Argued October 15, 1953; decided January 8, 1954.

*Frederick A. Keck* and *Harold S. Meltzer* for appellant in both above-entitled proceedings. I. Testatrix did not intend that the power of sale should survive the death of the persons whose lives measured the continuance of the trust. (*Matter of Miller*, 257 N. Y. 349; *Bruner* v. *Meigs*, 64 N. Y. 506; *Matter of McLaughlin*, 193 Misc. 192, 275 App. Div. 652; *Cussack* v. *Tweedy*, 126 N. Y. 81; *Hutkoff* v. *Winmar Realty Co.*, 211 App. Div. 726.) II. The trust having terminated, the trustee was without power to continue to manage, operate and control the real property forming the corpus of the terminated trust and the Surrogate's Court was without power or jurisdiction to grant these powers to the trustee. Appellant remainderman, as an owner in common, had legal title and could not properly be restrained from managing, operating and controlling her own property. (*Hutkoff* v. *Winmar Realty Co.*, 211 App. Div. 726.)

*Jack Korshin* for Theodore B. Klapper and others, respondents in first above-entitled proceeding and for respondent in second above-entitled proceeding. I. The power of sale in article Fifteenth of the will contains within itself authority for its exercise after the termination of the trust. (*Crittenden* v. *Fairchild*, 41 N. Y. 289; *Bruner* v. *Meigs*, 64 N. Y. 506.) II. The power of sale in article Twentieth of the will relates to the trust realty. It must be construed as a specific authorization to sell after termination of the trust or, at the very least, as a general power of sale pervading the entire will. (*Jones* v. *Jones*, 206 App. Div. 774; *Goodwin* v. *Coddington*, 154 N. Y. 283; *Matter of Title Guar. & Trust Co. [Baxter]*, 195 N. Y. 339; *Meyer* v. *Cahen*, 111 N. Y. 270.) III. A general power of sale of realty survives the termination of a trust unless a contrary intention appears in the will. (*Cussack* v. *Tweedy*, 126 N. Y. 81; *Hutkoff* v. *Winmar Realty Co.*, 211 App. Div. 726; *Matter of Rosenberg*, 145 Misc. 581; *Matter of McLaughlin*, 193 Misc. 192, 275 App. Div. 652; *Matter of Ring*, 98 Misc. 119; *Lindo* v. *Murray*, 91 Hun 335, 157 N. Y. 697; *Taber* v. *Willetts*, 1 App. Div. 285, 153 N. Y. 663.) IV. Circumstances within the contemplation of testatrix

show an intent that the powers of sale should survive the termination of the trust. (*Kinnier* v. *Rogers,* 42 N. Y. 531; *Matter of Bielby,* 91 Misc. 353.) V. The trustee is charged with the duty of managing trust property until the end of the trust. The trust will not end until the trustee's discharge after his final accounting. (*Neary* v. *City Bank Farmers Co.,* 260 App. Div. 791.)

*Mary Gardiner Jones,* respondent in person, and for Anna L. Watkins and another, respondents in first above-entitled proceeding.

*Frank P. Broz* for Mary H. Jones and another, respondents in first above-entitled proceeding.

CONWAY, J. Two proceedings are involved herein. The first is brought by the successor trustee under the last will and testament of one Mary E. Jones, deceased, for a construction of the language of that will conferring a power of sale upon the trustees. The second is brought on behalf of the successor trustee and by the caretaker of the real property involved for an order restraining appellant, Rosalie G. Jones, from interfering with the trustee in the management, operation and control by him of the real and personal property constituting the principal and income of the trust estate.

We shall treat the proceedings in turn.

The last will and testament of Mary E. Jones was duly admitted to probate in the Surrogate's Court of Nassau County following her death in 1918. By the terms of article Fifteenth certain property at Eaton's Neck was to constitute the entire corpus of the original trust. By virtue of a second codicil to the will certain other properties in Bayville, Lloyd's Neck and Jones' Point were added to the trust. The will devises the said parcels of real estate to the executors as trustees of a spend-thrift trust, to pay the income " to the use of such of [testatrix'] children as shall survive [her], in equal shares, and the issue of any deceased child or children, per stirpes and not per capita, during the lives of Philip L. Jones and Louise E. Jones." Philip L. Jones died shortly after the decedent. Louise E. Jones died on June 12, 1952, and the trust, by its terms, came to an end on that day.

At the date of the death of the said Louise E. Jones a portion of the realty constituting the corpus of the trust remained unsold.

The successor trustee, who is also the administrator *c.t.a.* of the estate, petitioned the Surrogate's Court (Nassau County) for a construction of his power under the will to sell the realty.

Both the trustee and appellant agree that the trust terminated upon the death of Louise E. Jones in 1952 and that at that point of time the real property remaining in the trust vested in the remaindermen. The parties also agree that there is in the law such a phenomenon as a power of sale of realty which will continue after the vesting of interest in the remaindermen. The only contest is as to whether the last will of Mary E. Jones conferred upon the trustees such a power, that is, an unlimited, general or unrestricted power of sale which survives the termination of the trust or whether she gave them only a limited or restricted power which ceased with the termination of the trust.

The pertinent portion of article Fifteenth of the will provides: " * * * And I hereby give and grant to my said Executors full power and authority, at any time, to sell, mortgage or lease any or all of the said premises, as in their discretion may seem best, and I further give and grant to my said executors full power to deal with the said premises in any manner or way as in their discretion may seem best, with the same powers that I might have if I were living. If any or all of the aforesaid premises are sold by my Executors, under the power of sale herein granted to them, I direct that the proceeds of such sale must be administered upon the same uses and trusts as the real property herein given in trust. * * *",

The quoted clause contains neither an express statement that the power of sale is to continue after termination of the trust nor an express statement to the contrary. Nevertheless, there is evidence in article Fifteenth of the intent of the testatrix to have the power continue. Thus, in the first sentence quoted the trustees are given " full power and authority, at any time, to sell * * * any or all of the said premises, as in their discretion may seem best * * *." The testatrix then continued by saying that the trustees were to have " the same powers that [she] might have if [she] were living." Such language is

broad and unlimited. In terms the trustees were empowered to sell " at any time " and they were granted the same absolute power over the property that the testatrix would have had had she been living. We think it obvious that the power of sale created by such language must necessarily be held to be a general and unlimited power unless the will contains other expressions demonstrating a desire on the part of the testatrix to free the trust of the power upon its termination.

The appellant contends that such a manifestation of testatrix' intent can be found in the sentence following that quoted above, to wit, " I direct that the proceeds of such sale must be administered upon the same uses and trusts as the real property herein given in trust." The argument is that this provision requiring the proceeds of a sale by the trustees to be administered upon the same uses and trusts as the real property given in trust, specifically limits the power of sale to the term of the trust.

The Surrogate construed this sentence as follows: " It should be noted that paragraph 'Fifteenth' gives the property to the executors in trust. As executors, the persons acting as trustees had charge of the balance of the estate. The Court construes the sentence quoted in this paragraph as directing that the proceeds of the sale of real property be continued as a part of the trust rather than to become a part of the general estate. It was not intended as a limitation of the time in which the power of sale might be exercised but merely to earmark the proceeds of such sales as trust funds of the spendthrift trust."

In other words, the Surrogate concluded, and, in our opinion, properly, that the sentence was inserted to instruct the executors, who were also the trustees by the terms of the will, that if during the term of the trust they exercised the power of sale given to them they were to retain the proceeds of the sale as a part of the trust estate and not to commingle it with the funds of the general estate. The sentence was not intended to restrict the broad power conferred by the early sentences of article Fifteenth.

Further evidence in support of the conclusion that testatrix intended to create a continuing power of sale is to be found in this will. Wherever she devised real property, with the exception of the home farm which she apparently intended should be

used for homes for her children, she granted a power of sale. In all, the will contains three powers of sale. The language of article Fifteenth conferring such a power on the executor-trustees has already been quoted. By article Nineteenth she disposed of her residuary estate and granted a power of sale as follows: " * * * All the rest, residue and remainder of my property, both real and personal, of whatsoever kind, and wheresoever situate, I hereby give, devise and bequeath to my executors, in trust, to sell and convert the same into cash * * *."

Articles Fifteenth and Nineteenth were the only paragraphs under which it might have been necessary to make any sale of realty since the remainder of the will covers specific bequests or the devises of the home farm. Notwithstanding that she had two powers of sale already in the will, under article Twentieth naming her executors, who thereby became her trustees, she granted a further power of sale: " * * * giving to my said executors full power and authority to sell, lease or mortgage any or all of my real property, with the exception of the aforesaid home farm, at any time, as in their discretion may seem best, hereby giving them full power and authority to execute all necessary conveyances, leases, mortgages, etc.". We may not close our eyes to article Twentieth nor disregard its provisions as surplusage. Effect must be given, so far as possible, to all parts of a will. It seems to us that article Twentieth was included in the will to dispel any doubt that might arise as to Mary E. Jones' intent to authorize her executor-trustees to sell the real estate devised to them in trust under article Fifteenth or devised to them under article Nineteenth, the residuary clause of the will.

Even if in a case such as this it could be said that there were two reasonable, but conflicting, inferences which might be drawn as to the intent of the testatrix in writing article Fifteenth we should choose that construction which the law favors by reason of common experience, that is, that the power of sale continues beyond the date of the termination of the trust (see *Cussack* v. *Tweedy*, 126 N. Y. 81; *Forman* v. *Young*, 166 App. Div. 815; *Matter of Ring*, 98 Misc. 119; *Hutkoff* v. *Winmar Realty Co.*, 211 App. Div. 726; *Matter of McLaughlin*, 193 Misc. 192, affd. 275 App. Div. 652). In the last case cited (p. 193) Surrogate

DELEHANTY correctly stated the principle that may be gleaned from the cases as follows: "The authorities say that a general, unlimited and unrestricted power of sale of realty is not inconsistent with the devise to another of a vested interest in the same property. These cases say that if the tenor of a will does not limit the power to sell expressly or impliedly upon the trust term, the power is deemed to continue unaffected by the passing of the title to the trust *res* (*Cussack* v. *Tweedy*, 126 N. Y. 81; *Hutkoff* v. *Winmar Realty Co.*, 211 App. Div. 726). Commentators are in agreement with these principles (Chaplin on Express Trusts and Powers, p. 570; 3 Scott on Trusts, pp. 1890–1891)."

It is not surprising that the courts should favor a construction which continues the power of sale. Rules of construction of wills operate as presumptions and like other presumptions indulged by the law have generally been derived from common experience. If a general power of sale is conferred upon trustees costly partition actions with their attendant delay may be avoided — particularly complicated and protracted where infants and incompetents are involved — and the possibility of discord among the residuary owners may at least be reduced, if not eliminated. Those are salutary results and so it is reasonable to expect that a decedent would wish to accomplish them. Moreover, it is reasonable to assume that a testatrix who has given her property into the hands of another to manage with absolute freedom of discretion during the period of two lives in being, has sufficient confidence in such person's judgment, to leave it to such person to determine, when the trust has ended, whether the interests of the remaindermen will best be served by a sale of the property and a division of the proceeds obtained thereby.

Only one case has been called to our attention where it has been held that the power of sale conferred upon the trustee was a limited one. That is the early case (1876) of *Bruner* v. *Meigs* (64 N. Y. 506), where the power of sale was limited by the terms of the will to " the continuance of such trusts ". That is not this case.

The construction placed upon the power of sale below was correct.

It appears that on July 13, 1952, a month after the trust had terminated, the appellant went to the Eaton's Neck property which forms part of the corpus of the trust, and there demanded that the caretaker desist from collecting parking fees from the visitors to the property and over the protest of the caretaker began, herself, to collect such fees.

The appellant's position is that the trust having terminated, the trustee was without power to continue to manage, operate and control the real property forming the corpus of the terminated trust and that the Surrogate's Court was without power or jurisdiction to grant such powers to the trustee; that the appellant remainderman, as an owner in common, had legal title and could not properly be restrained from managing and controlling her own property.

The trustee recognizes, as we have already said, that the trust terminated upon the death of the second measuring life. It is his contention, however, that his duties and rights as trustee did not end at that time but that there remains, after the termination of the trust, the duty of finally accounting and of conveying the corpus to the persons entitled to it, and there remains to him the absolute right to be discharged by the court before he relinquishes control of the trust property. This, he contends, necessitates his having the power to manage and control the property, to the exclusion of the remaindermen, pending final accounting by him.

A tenant in common has the right to enter upon her land and take the rents and profits thereof. Of course, one joint tenant may maintain an action to recover his just proportion against his cotenant who has received more than his or her own just proportion (Real Property Law, § 532). But, we are not here concerned with that problem. This case deals only with the question of the trustee's right to exclude a cotenant from management and control of the property after termination of the trust but before final accounting.

With respect to *personal property* belonging to a terminated trust the rule is that the duty remains with the trustee to divide the personalty and to distribute it and the trust is not complete until the trustee has finally accounted, distributed the property to the persons entitled to it and been discharged (see

*Matter of Miller,* 257 N. Y. 349, 355; *Neary* v. *City Bank Farmers' Trust Co.,* 260 App. Div. 791, 793). A different rule obtains with respect to trusts of *real property.* That rule we stated in *Matter of Miller (supra,* p. 356), as follows: '' In respect to the real estate  *  *  *  the Surrogate was without jurisdiction concerning expenditure, income, commissions or any other item relating to it. Upon the termination of the trust, title to that realty immediately vested in the widow and the other beneficiaries mentioned in the will. (*Watkins* v. *Reynolds,* 123 N. Y. 211; *Townshend* v. *Frommer,* 125 N. Y. 446, 461.) The trustees no longer possessed a right under that instrument to perform any act of administration in respect to such real property. The trust had ended and no court was warranted in extending the term. That part of the judgment in the Supreme Court action which assumed to bestow upon retiring trustees of a terminated trust a continuing faculty as testamentary trustees to control and manage the real estate for an indefinite duration is unauthorized.'' (See, also, *Matter of McLaughlin, supra,* 193 Misc. 192, 193–194, affd. 275 App. Div. 652), where Surrogate DELEHANTY wrote: '' It is now settled law (*Matter of Miller,* 257 N. Y. 349) that title to real estate which constitutes the corpus of a trust vests in the remainderman perforce the provisions of the will and immediately upon the termination of the intervening estate. The incidents of ownership thus acquired are complete and unencumbered except for the power of sale which still remains in the trustee.  *  *  * '' And, section 109 of the Real Property Law provides: '' When the purpose for which an express trust is created ceases, the estate of the trustee shall also cease.''

Consequently, the trustee here no longer possesses a right to perform any act of administration in respect to the realty. Ownership in the remaindermen is complete and unencumbered except for the power of sale which still remains in the trustee. The remaindermen may not be restrained from collecting the rents-and profits falling due from the realty.

In the first above-entitled proceeding the order of the Appellate Division should be affirmed, with costs to all parties filing briefs payable out of the estate.

In the second above-entitled proceeding the orders of the Appellate Division and the Surrogate's Court should be reversed and the motion of the respondent for a restraining order denied, with costs to the appellant in all courts and to the respondent in this court, payable out of the estate.

LEWIS, Ch. J., DESMOND, DYE, FULD, FROESSEL and VAN VOORHIS, JJ., concur.

In first above-entitled proceeding: Order affirmed.
In second above-entitled proceeding: Orders reversed, etc.