Lott H. Wells, S.
The Potsdam Hospital, a nonprofit domestic corporation, duly organized under the laws of the State of New York, and conducting and carrying on a general hospital in the Village of Potsdam, an alternate residuary beneficiary in the will of Jennie E. Snell, dated October 30, 1942, has petitioned for a determination as to the validity, construction, or effect of the disposition of the residue of the property therein contained (Surrogate’s Ct. Act, § 145). On the return of the citation, Catherine Lukens, the surviving testamentary trustee was directed by the court to make and settle an intermediate account of her proceedings (Surrogate’s Ct. Act, § 256). The surviving trustee accounting for the administration of the estate from August 22, 1955, also requests a construction of the will. The testatrix died on November 27, 1945, survived by her grandson, Murray D. Snell, sole distributee, and her will was admitted to probate by decree of this court dated January 21, 1946. The trustees named in the will duly qualified (Surrogate’s Ct. Act, § 167). By judicial settlement decree, July 21, 1947, the actual residuary estate was turned over by the executors to the trustees. Irving Parmeter, cotrustee acted until the date of his death on December 5,1958.
The will creates a trust of the residuary estate for the education of a great-grandson, Paul Snell, and the question to be determined is whether the trust by its terms has come to an end and the disposal of the remainder. There is no residuary clause in the will. The Potsdam Hospital, the alternate beneficiary of the residue, contends its remainder interest vested subject to being divested by fulfillment of the trust purpose, which divestment failed by Paul Snell not completing his college course. Paul Snell contends, on the other hand, (1) that the gift for him was indefensibly vested, (2) that any substitution was intended to take effect only if he failed to elect.
The will provides as follows: “ If my Grandson shall care to have the use of my farm and the house thereon as a home for himself and family, until his Son, Paul E, Snell, becomes twenty- *375 one years of age, I direct my executors to permit Mm to do so upon the following terms and conditions: That he shall keep the buildings in repair and properly insured, and pay all taxes assessed against the same and cut no live trees or timber into wood, though he may have the dead and dying trees therein. * * #
“ If my said Grandson does not care to occupy the farm and house upon the following terms, or if he elects to and does not comply with the conditions above named, I direct my executors if possible to rent the same, upon at least as favorable terms as those granted to him, and if they are unable to do so and are satisfied that the farm and house cannot be maintained without a serious loss, I empower them to sell and convey the same. If not so sold and conveyed, when he becomes twenty-one years, I devise the same to My Great Grandson, Paul E. Snell. * * *
‘ ‘ All the rest, residue, remainder, of my estate including the proceeds of the real estate if it be sold as hereinbefore provided, I give and devise to Irving Parmeter, of Watertown, and Catherine Lukens of Heuvelton, New York, in trust however, to keep and invest and from time to time reinvest and when he becomes old enough to determine if he desires a musical education, and/or a course in some college, I direct said trustees to use both income and principal of said sum for the purpose of giving him such education so far as it will go. * * *
‘ ‘ If the said Paul E. Snell, when or before he shall obtain the age of twenty years does not elect to obtain a musical education and/or a course in some college, I direct that my trustees turn over said fund to the Potsdam Hospital, to equip or maintain a room in memory of Virginia E. Snell.”
Murray D. Snell, grandson, was using the 97-acre farm as a home for himself and family on November 27,1945, when Jennie E. Snell died. To have the use of the property until Paul became 21, the will required him to keep the buildings in repair and pay the taxes and insurance. He did not pay the town tax due in January, 1946. On March 7, 1946, the executors requested him to pay this tax or move. About May 15, 1946, without paying this tax or the insurance, Murray Snell moved from the farm, and waived and abandoned his right under the will. On September 14, 1946, the executors contracted to sell the farm for $4,000, and on September 30, 1946 tendered deed which the purchaser refused to accept without court approval. On October 16, 1946, the executors petitioned for advice and direction as to the propriety, price, manner and time of sale (Surrogate’s Ct. Act, § 215). The sale was approved by the Surrogate on December 10,1946.
*376 Paul E. Snell, great-grandson of Jennie Snell, was born December 5, 1937. In September, 1955, at 17, he elected to comply with the condition of the bequest and chose and was admitted to Eastern Nazareno College, Wollaston Park, Quincy, Massachusetts. After completing two semesters, he voluntarily withdrew from this college in June, 1956. In September, 1956 he was admitted to Rochester Institute of Technology, Rochester, New York where he remained until March, 1958, when he was requested to withdraw for academic reasons; at that time he was over 20 years of age. He did not thereafter attempt to gain admission to any college. He then moved from job to job, short-order cook, laborer, truck driver, fly boy in printing shop, until his present employment as tractor trailer driver which began February, 1959, when he went to work for his father. He married April 18, 1959, and resides with his wife at Marcellus, New York. He has the desire to continue his education, but believes he is unable to because of his marriage and finances. He is interested in photo journalism.
The account shows a gross estate of $16,179.75 with net of $14,738.63. The trustees paid Eastern Nazar ene College $754.50 for tuition, board, room, textbooks and insurance and $575.28 to Paul for clothing, travel, and other expenses at this college. The trustees then paid Rochester Institute of Technology, matriculation, tuition, laboratory and incidental fees of $1,614 and to Paul, living expenses, clothing, photographic supplies and other expenses, $3,850, for total at both colleges (income and principal), of $6,793.78. This expenditure is not objected to, either as not as required by the will (Education Law, § 2, subd. 2), or as restricted to a college of a particular standing or description (Matter of Jacobs, 244 App. Div. 161 [1935]), or restricted to a designated residence, education and degree (Matter of Goldberg, 48 N. Y. S. 2d 360 [1944]).
“ This is a construction problem. In resolving it primary attention must be given to the manifest purpose sought to be accomplished. When this is ascertained it will take precedence over all other canons of construction” (Matter of Herzog, 301 N. Y. 127, 135 [1950]).
‘ ‘ The extent of the interest of a beneficiary of a trust must be definitely ascertained at the time of the creation of the trust or ascertainable within the period of the rule against perpetuities. It may, however, be a future interest or a present interest, and it may be either vested or contingent. It may be contingent as to its extent. Thus a beneficiary may be entitled to so much of the income or principal as is necessary for his education”. (2 Scott, Law of Trusts [2d ed.], § 129.)
*377 Paul Snell was four years of age when the will was made. It was for this reason testatrix vested the residue of the estate in trustees for preservation of her capital. No objection has been made that a valid trust was not created. The purpose is plainly indicated on the face of the instrument, “ to keep and invest and from time to time reinvest ’ ’, intending the income to be accumulated during Paul’s minority, until his election (Personal Property Law, § 16). The intent to suspend the power of alienation only during the life of her great-grandson, Paul is clear. The absolute ownership is suspended (Beal Property Law, § 42; Personal Property Law, § 11), “by conveying the estate to trustees upon some authorized trust ” (Everitt v. Everitt, 29 N. Y. 39, 72 [1864]). “ [A]n express trust, valid as such in its creation, shall vest in the trustee the legal estate, subject only to the execution of the trust, and the beneficiary shall not take any legal estate or interest in the property, but may enforce the performance of the trust” (Real Property Law, § 100). And section 109 of the Real Property Law provides: “ [w]hen the purpose for which an express trust is created ceases, the estate of the trustee shall also cease ”. “ With respect to personal property belonging to a terminated trust the rule is that the duty remains with the trustee to divide the personalty and to distribute it and the trust is not complete until the trustee has finally accounted, distributed the property to the persons entitled to it and been discharged ” (Matter of Jones, 306 N. Y. 197, 205 [1954]).
The bequest to Paul Snell was subject to a condition subsequent, performance of which conferred an education. “ Express conditions may be either precedent or subsequent. Precedents are such as must happen or be performed before the estate can vest or be enlarged; subsequent are those by the failure or nonperformance of which an estate already vested may be defeated ” (Steinbacher v. Less, 167 Misc. 787, 788-789 [1938]; 7 Warren’s Heaton, Surrogates’ Courts, § 96, subd. 5, p. 657; 3 Jessup-Redfield, Surrogates Law and Practice, § 2236, p. 344; Matter of Fogel, 3 Misc 2d 994 [1956]). This construction problem, except the creation of the trust and alternate bequest is similar to Matter of Tandlich (122 Misc. 600, 601 [1924]), where will directed all property ‘1 be applied for the study of my nephews and nieces, provided that my nephews and nieces choose to study a profession ”. “No trust is created, no trustee named, no period named for which the trust is to run, nor any lives referred to by which the duration of a trust is to be measured * * * There is no residuary clause * * *. The testator leaves nine brothers and sisters as his next of kin, so that if this *378 paragraph be construed in such a manner as to result in intestacy * * * these brothers and sisters would take to the exclusion of the nephews and nieces. The court is of the opinion * * * that the testator * * * clearly expresses a preference for these nephews and nieces * * * the law favors testacy rather than intestacy where it is possible to adopt such a construction. The provision with regard to study of a profession is a condition subsequent * * * construed as giving legacies to the respective nephews and nieces, with the precatory words attached that they study a profession * * * each * * * is entitled to a proportionate share of this fund ’ \
“ Conditions are not favored by law; and hence they must be clearly expressed, * * * there must be some words, which, ex vi termini, import that the vesting or continuance of the estate is to depend upon the supposed condition ” (Craig v. Wells, 11 N. Y. 315, 320 [1854]). There are in this case the words, ‘ ‘ does not elect to obtain a musical education and or a course in some college ”, which can receive such a construction and indicate such an intent. “ The ground upon which may be defeated the title of a grantee, and which will support a claim for forfeiture as for breach of condition subsequent, must be substantial and clearly established ” (Rose v. Hawley, 118 N. Y. 502, 513 [1890]).
Paul Snell was seven, when testatrix died. In the event he had not lived to elect or had not elected, the Potsdam Hospital was the residuary beneficiary. ‘‘ Where a future estate is dependent on a precedent estate, it may be termed a remainder, and may be created and transferred by that name” (Real Property Law, § 38). Here the precedent estate is the estate in trust, held by the trustees. Is the Potsdam Hospital the remainderman of the trust estate? Paul Snell did elect. The interest of the Potsdam Hospital is defined and limited by section 101 of the Real Property Law. “ The last section shall not prevent any person, creating a trust, from declaring to whom the real property, to which the trust relates, shall belong, in the event of the failure or termination of the trust, or from granting or devising the property, subject to the execution of the trust. Such a grantee or devisee shall have a legal estate in the property, as against all persons, except the trustees, and those lawfully claiming under them”. The testatrix directed her trustees to, “ turn over said fund to the Potsdam Hospital” in event of termination of trust by failure of Paul to elect before he became 20 years of age. This was the extent of the “ granting or devising the property subject to the execution of the trust ’ ’. The substitution was to operate in the *379 single event named, the failure of Paul to elect. The great-grandson and his education was the primary object of the testatrix’ regard in these provisions of the will. If her bounty could not take in that direction, she designated it for the hospital. Has the primary gift been renounced or failed by Paul’s failure to continue his education since March, 1958? In such case the question is not one of renunciation, but of interpretation and intention. “ In ease of an alternate gift, after the party having the election makes an unequivocal acceptance of the gift with a condition annexed, his alternate acquires no interest in the fund ” (3 Jessup-Redfield, Surrogates Law and Practice, § 2242, p. 348; Matter of Whittelsey, 180 Misc. 602 [1943]; Matter of Parodi, 124 N. Y. S. 2d 869 [1953], affd. 284 App. Div. 949).
It is clear testatrix segregated her property carefully, intending the home farm should be a home for her grandson, Murray, and remain in the family and be enjoyed by her closest blood relative and his descendants by vesting the property in her great-grandson, Paul, when he became 21, subject to being divested by sale. Her first dominant testamentary purpose was that the farm should not be sold or be a part of the trust estate. “It is a general principle, that where the gift is absolute, and the time of payment only, postponed; time, not being of the substance of the gift, but relating only to the payment, does not suspend the gift, but merely defers the payment ” (Warner v. Durant, 76 N. Y. 133-136 [1879]). This principle will act in this case to vest the devise, for the devise was in the outset, to the devisee. However, if circumstances required the farm to be sold, her second intention was to make the proceeds of the sale a part of the trust estate. The words, “ so far as it will go ” are indicative of testatrix’ ultimate purpose and does evidence an awareness of the fact that even with the addition of the real estate, her trust estate might not be sufficient for Paul’s education. If testatrix had not intended an indefeasible gift for Paul, she could have provided for the remainder, if any, after Paul completed his education, as she provided for substitution of Potsdam Hospital on contingency of Paul’s failure to elect.
The trust by its terms has not come to an end. The duties and rights of the surviving trustee remain in full force and effect. The duration was limited only if Paul failed to elect. The duration during the continuance of Paul’s life, distinguishes this case from Matter of Jacobs (244 App. Div. 161, 162 [1935]) where decedent gave $3,000 in trust “to be expended for a college course in Vassar or Wellesley College or a college of *380 equal standing” for her granddaughter, with a gift over of principal in event the granddaughter ‘1 shall refuse to take such course before she arrives at the age of twenty-five years or is unable to do so”, which held (p. 167) “Inasmuch as she is given the fund on condition that she pursue a college course within the time limited, and may still elect so to do, she is the person presumptively entitled to the next eventual estate, the ultimate vesting thereof depending upon her said election, and the right of the appellant thereto being subordinate to and contingent upon said election ”. Paul Snell having elected to pursue the prescribed college course before arriving at age of 20, there was no unlawful accumulation of income prior to December 5, 1958, as section 16 of the Personal Property Law permits an accumulation of income during the minority of the person for whose benefit the accumulation is intended. However, Paul is now past 24, and having failed to pursue such college course since March, 1958, the possibility of an unlawful accumulation of income has now become an actuality (Matter of Jacobs, supra, p. 167). “ By section 63 of the Real Property Law such an invalid accumulation belongs to the person presumptively entitled to next eventual estate. The rule is equally applicable to future interests in personal property ”. (Personal Property Law, § 11; Matter of Jacobs, supra, p. 167.)
By the provisions of the will, however, Paul Snell continues to possess the right to pursue such course or education. The ultimate vesting in Paul Snell was accomplished by Ms election (Matter of Jacobs, supra, p. 167). “Where there is no gift but by a direction to executors or trustees to pay or divide, and to pay at a future time, the vesting in the beneficiary will not take place until that time arrives ” (Warner v. Durant, 76 N. Y. 133, 136 [1879]). “ [T]he courts have long expressed a preference for a testamentary construction wMch results in an early indefeasibility, an early and final vesting of estates. Accordingly, a construction which renders a vested remainder defeasible will be restricted to the exact circumstances specified ’ ’ (Matter of Campbell, 307 N. Y. 29, 33 [1954]; Matter of Krooss, 302 N. Y. 424, 428 [1951]). The void accumulation of income since December 5, 1958, when Paul Snell became 21, does not pass to Paul Snell by virtue of the terms of the will, but by virtue of the command of the statute, and should be paid to him as the person presumptively entitled to the next eventual estate, inasmuch as he is given the fund on condition that he pursue a college course and the ownership was determined by Ms election in September, 1955 (Matter of Jacobs, supra, p. 167).
*381 ‘ ‘ A legatee of an unconditional legacy need never formally accept the legacy. If he does not wish it, he must affirmatively renounce it. So long as it is not needed for creditors of the deceased or for administration expenses, no one has the power to deprive him of it. He may not rid himself of his legacy except by his own affirmative act ” (Matter of Wilson, 298 N. Y. 398, 403 [1949]). On the question of time on an election to take a conditional bequest, “ The general principle is that election must be made within a time that is equitable in the light of all the circumstances. This time may be very long, if injury to others will not result from the delay, and by the same token very short if the failure to act promptly may work injury or hardship. * * * Broadly speaking, we may say that at least there should be adequate opportunity to investigate the cost of the burden as compared with the value of the benefit and to' acquire that knowledge of the facts without which choice, if made, would be uninformed and unintelligent * * * In the absence of statute, the question is one of fact whenever conflicting inferences are possible ” (Oliver v. Wells, 254 N. Y. 451, 459, 460 [1930]). The acceptance of the bequest in 1955 by Paul Snell is not disputed. The objection implies that after acceptance, from September, 1955 through March, 1958, Paul Snell renounced his bequest by not continuing his education within a reasonable time, March, 1958 to date. At the hearing, Paul Snell declared he desired to continue to pursue a college course. This eliminates any question of his unconditional acceptance of the conditions of the bequest (Matter of Parodi, 124 N. Y. S. 2d 869, 871, supra). The fact his education was interrupted by Rochester Institute of Technology requesting him to withdraw from college for academic reasons does not mean he was not complying with the conditions of the bequest or that he has renounced his legacy or cannot still comply with the conditions and continue to pursue a college course as required by the will.